**REVISED, June 28, 1999**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

97-30872

---

DICKSON MARINE INCORPORATED;
DICKSON GMP INTERNATIONAL, INCORPORATED;
POWER OFFSHORE SERVICES INCORPORATED;
POWER WELL SERVICE NO. 4, INCORPORATED

Plaintiffs/Appellants,

versus

PANALPINA, INC.;
PANALPINA NEW ORLEANS;
PANALPINA PORT GENTIL; AIR SEA BROKER, A.G.;
AIR SEA BROKER, S.A.;
AIR SEA BROKER, LTD; SATRAM; SEMTS;
and L'UNION DES ASSURANCES DE PARIS, (UAP)

Defendants,

and

AIR SEA BROKER, LTD. and PANALPINA
TRANSPORTS MONDIAUX GABON S.A.

Defendants/Appellees.

---

Appeal from the United States District Court
for the Eastern District of Louisiana
June 23, 1999

Before DeMOSS, PARKER, and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

The district court dismissed the Louisiana plaintiffs' actions against two foreign corporate subsidiaries of a multinational corporation on grounds of lack of personal jurisdiction in Louisiana as to one defendant and forum non conveniens as to the

1

other.  The Plaintiff argues that Louisiana is the proper forum for the actions because of an agency relationship or a lack of separate corporate identity between the corporations.  For essentially the same reasons assigned by the district court, we affirm the district court's decision to reject the plaintiffs' arguments and dismiss their actions.

I.

The Plaintiffs, Dickson Marine, Inc., Dickson GMP International, Inc., Power Offshore Services, Inc., and Power Well Service No. 4, Inc. (collectively referred to as "Dickson"), brought these actions to recover for significant property damage to the DICKSON IV, a vessel owned and operated by Dickson.

In 1992 the DICKSON IV was operating off the coast of West Africa and was in need of repairs.  To arrange for these repairs, Dickson contacted the New Orleans office of Panalpina, Inc., an American corporation based in New Jersey ("Panalpina-N.J.").  Unable to help directly, Panalpina-N.J. referred Dickson to Air Sea Broker, Ltd. ("Air Sea").  Air Sea put Dickson in touch with Panalpina Transports Mondiaux Gabon S.A ("Panalpina Gabon") in Port Gentil, Gabon to handle the repairs.  Panalpina Gabon did not have actual repair capabilities, but it subcontracted with SATRAM and SEMTS to conduct the necessary work.  During the repair work, the DICKSON IV capsized.

In 1993, Dickson and its hull underwriters filed a "Zahlungsbefehl" in Switzerland against Air Sea.  A Zahlungsbefehl

(an order to pay) is a legal document that interrupts the statute of limitations and preserves a party's legal rights. Thereafter, in 1995 Dickson filed this suit in Louisiana state court against Panalpina-N.J., Panalpina Gabon (Incorrectly identified as Panalpina Port Gentil), Air Sea (Incorrectly identified as three separate companies), SATRAM, SEMUS, and L'Union des Assurance de Paris. Panalpina-N.J., Panalpina Gabon, and Air Sea removed the suit to Federal Court.

In the district court, Dickson released and dismissed SEMTS and L'Union des Assurance de Paris. SATRAM has not appeared and Dickson has not sought a default judgment against them. The action against Panalpina-N.J. was dismissed on summary judgment. Thus, the only defendants on appeal are Panalpina Gabon and Air Sea.

Panalpina Gabon is a Gabonese corporation with its principal place of business in Port Gentil, Gabon. Air Sea is a Swiss corporation with its principal place of business in Basel, Switzerland. Air Sea and Panalpina Gabon are subsidiaries of Panalpina World Transport, Inc. ("Panalpina World"), an international conglomerate having operations through subsidiaries on six continents. Air Sea acts as a coordination/liaison office for Panalpina World's subsidiaries on the Western Coast of Africa.

Panalpina Gabon filed a motion to dismiss for a lack of personal jurisdiction and Air Sea filed a motion for dismissal due to forum non conveniens in the district court. The district court granted both motions. Dickson is appealing the orders of the district court.

## II.

The only issues Dickson brings before this Court are (1) did the district court commit error in granting Panalpina Gabon's motion to dismiss for lack of personal jurisdiction, and (2) did the district court abuse its discretion in granting Air Sea's motion of forum non conveniens.

## III.

Absent any dispute as to the relevant facts, whether in personam jurisdiction can be exercised over a defendant is a question of law and subject to de novo review. *Ruston Gas Turbines, Inc. v. Dondaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).

A district court's dismissal for forum non conveniens is reviewed by a court of appeal for an abuse of discretion. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S.Ct. 252, 266 (1981). Appellate courts "review the lower court's decisionmaking process and conclusion and determine if it is reasonable," they do not "perform a de novo analysis and make the initial determination for the district court." *In Re Air Crash Disaster Near New Orleans, Louisiana*, 821 F.2d 1147, 1167 (5th Cir. 1987).

## IV.

To exercise personal jurisdiction over a nonresident defendant, two requirements must be met. First, the nonresident defendant must be amenable to service of process under a State's long-arm statute. *Jones v. Petty-Ray Geophysical, Geosource, Inc.*,

4

954 F.2d 1061, 1067 (5th Cir. 1992). Second, the assertion of in personam jurisdiction must be consistent with the 14th Amendment's Due Process Clause. *Id.* Because Louisiana's long-arm statute extends to the limits of due process, we only need to determine if subjecting Panalpina Gabon to suit in Louisiana would offend the Due Process Clause of the 14th Amendment. *See* LSA-R.S. 13:3201(B). *See also Petroleum Helicopters, Inc. v. Avco Corp.*, 513 So.2d 1188, 1191 (La. 1987).

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which the individual has established no meaningful "contacts, ties, or relations." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474, 105 S.Ct. 2174, 2183 (1985), *citing International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154 (1945). Requiring that individuals have "fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign," *Shaffer v. Heitner*, 433 U.S. 186, 218, 97 S.Ct. 2569, 2587 (1977) (Stevens, J., concurring), the Due Process Clause "gives a degree of predictability to the legal system that allows potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Burger King*, 471 U.S. at 474, 105 S.Ct. at 2183, *citing World-Wide Volkswagen Corp. v. Woodson*, 44 U.S. 286, 297, 100 S.Ct. 559, 567 (1980).

Due process will not be offended if the nonresident defendant has "certain minimum contacts with [the forum] such that the

5

maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe*, 326 U.S. at 316, 66 S.Ct. at 158, *quoting Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343 (1940). When an action "arises out of" a defendant's contacts with the forum, a "relationship among the defendant, the forum, and the litigation" is the essential foundation of in personam jurisdiction. *Shaffer v. Heitner*, 433 U.S. 186, 204, 97 S.Ct. 2569, 2579 (1977). This type of jurisdiction, in which the suit arises out of or is related to the defendant's contacts with the forum, is commonly referred to as "specific jurisdiction." *Helicopteros Nacionales De Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 1872 n. 8 (1984). Additionally, there may be instances "in which the continuous corporate operations within a state [are] so substantial and of such a nature as to justify suit against [a foreign defendant] on causes of action arising from dealings entirely distinct from those activities." *International Shoe*, 326 U.S. at 318, 66 S.Ct. at 159. When this situation prevails, enabling the state to exercise personal jurisdiction over a defendant in a suit not arising out of or not related to the defendant's contacts with the forum, the forum is said to have "general jurisdiction." *Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. at 1872. Defendants can be subject to general in personam jurisdiction if they have "continuous and systematic" contacts with the forum state. *Perkins v. Benquet Consolidated Mining Co.*, 342 U.S. 437, 445, 72 S.Ct. 413, 418 (1952)

6

In the present case, Dickson avers that Panalpina Gabon is subject to in personam jurisdiction in Louisiana under a specific jurisdiction theory because of the contacts created when Air Sea assisted Dickson in contracting for vessel repairs with Panalpina Gabon in Gabon. In the alternative, Dickson claims Panalpina Gabon has continuous and systematic contacts with Louisiana to warrant general jurisdiction. We will consider Dickson's arguments in turn.

A.

As we stated above, when the litigation "arises out of" a defendant's contacts with the forum, a "relationship among the defendant, the forum, and the litigation" is the essential foundation of specific jurisdiction. *Shaffer*, 433 U.S. at 204, 97 S.Ct. at 2579. There must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239-40 (1958). The "purposeful availment" element "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, ... or of the 'unilateral activity of another party or a third person.'" *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183.

Dickson maintains that the repair arrangement with Panalpina Gabon represents and establishes sufficient contacts to warrant

7

specific jurisdiction. Notably, however, there is no evidence in the record of a written or formalized contract between Panalpina Gabon and Dickson for the repair of the DICKSON IV. The record shows that a Dickson representative contacted the office of Panalpina-N.J. in New Orleans which contacted Air Sea which assisted Dickson in contracting with Panalpina Gabon for the repair of Dickson's vessel in Gabon. Employees of Dickson traveled to Gabon to inspect the facilities and to receive an estimate of repair. Panalpina Gabon began the repairs in Gabon, but there is a dispute as to whether Dickson actually accepted Panalpina Gabon's offer.

In any event, the existence of a contractual relationship, although relevant, does not automatically establish sufficient minimum contacts. *Burger King*, 471 U.S. at 478, 105 S.Ct. at 2185. A contract is merely an intermediate step serving to tie up prior consequences which themselves are the real object of the business transaction. *Id*. The factors of prior negotiations and contemplated future consequences, along with the terms of a contract and the parties' actual course of dealing, must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum. *Id*. Thus, regardless of whether an actual written contract existed, we must look to the prior negotiations, contemplated future consequences of the agreement, and the actual course of dealing between the parties to determine if minimum contacts existed between Panalpina Gabon and Louisiana.

In attempting to show sufficient minimum contacts, Dickson presents a three-part argument. First, Dickson assumes that Air Sea made enough contacts with Louisiana, related to the repair contract between Dickson and Panalpina Gabon, to subject Gabon to Louisiana jurisdiction if those contacts are attributable to Gabon. The facts in the record, however, do not support Dickson's initial assumption.

The bulk of the negotiations to repair the DICKSON IV occurred in Gabon, Africa and Basel, Switzerland. The arrangement called for its performance in Gabon and contemplated only minimal contacts between Dickson and either Panalpina Gabon or Air Sea in Louisiana. Essentially, the transaction was a contract of repair between Dickson and Panalpina Gabon entered into in Gabon. The parties contemplated that once Panalpina Gabon repaired the vessel in Gabon and Dickson made payment, all contacts created by the arrangement would cease. Moreover, no portion of the performance was to occur in Louisiana. The sole place of performance was to be on the coast of Africa in Gabon. *See Petty-Ray Geophysical*, 954 F.2d at 1068. Dickson sought out Air Sea and Panalpina Gabon for the repairs; neither employees nor agents of Panalpina Gabon or Air Sea came to Louisiana to solicit the repairs of the specific vessel DICKSON IV. As the Supreme Court has stated, the "unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state." *Hanson v. Denckla*, 357 U.S. at 253, 78 S.Ct. at 1239-40. Because the repairs on the DICKSON IV created only limited contacts with

9

Louisiana, were performed entirely outside of Louisiana, were negotiated for primarily in Gabon, and were initiated by Dickson, the contacts with Louisiana created by the repair contract or arrangement were not sufficient to establish the minimum contacts with the forum as required by due process.

Second, Dickson nevertheless attempts to prove that the contacts of Air Sea can be attributed to Panalpina Gabon, asserting that Air Sea acted as Panalpina Gabon's agent or that Air Sea was the alter-ego of Panalpina Gabon. Dickson's argument fails because it cannot demonstrate that Panalpina Gabon exercised control over Air Sea.

Courts have long presumed the institutional independence of related corporations, such as parent and subsidiary, when determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 45 S.Ct. 250 (1925). This presumption of corporate separateness, however, may be overcome by clear evidence. *Donatelli v. National Hockey League*, 893 F.2d 459, 465 (1st Cir. 1990). Invariably such clear evidence requires an additional or a "plus" factor, "something beyond the subsidiary's mere presence within the bosom of the corporate family." *Id*. There must be evidence of one corporation asserting sufficient control to make the other its agent or alter ego. *Id*., 893 F.2d at 465-66. *See also Walker v. Newgent*, 583 F.2d 163, 167 (5th Cir. 1978); *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 420 (9th Cir. 1977). Moreover, the burden of making a prima facie

10

showing of such symbiotic corporate relatedness is on the proponent of the agency/alter ego theory. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 492-93 (5th Cir. 1974), *overruled on other grounds, Insurance Corporation of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702-03, 102 S.Ct. 2099, 2104-05 (1982), *as stated in Burstein v. State Bar of California*, 693 F.2d 511, 518 n. 12 (5th Cir. 1982).

It is undisputed that Air Sea frequently has benefited Panalpina Gabon by assisting maritime companies in contracting with Panalpina Gabon for services in Gabon. But there is no evidence in the record that Panalpina Gabon controlled Air Sea. The record shows that Air Sea is a "middleman" who assists vessel owners in contracting with Panalpina World subsidiaries in countries on the West coast of Africa for maritime service. These facts alone are not enough evidence to establish a prima facie case of control. Dickson has not alleged concrete facts or introduced any evidence to show that Air Sea had any actual or apparent authority to bind Panalpina Gabon, or that Air Sea and Panalpina Gabon have disregarded corporate formalities to the point of Air Sea being an alter ego of Panalpina Gabon.

In *Hargrave v. Fibreboard Corporation*, 710 F.2d 1154 (5th Cir. 1983), this Court set out factors to be considered in deciding whether a parent company can be held amenable to personal jurisdiction because of the acts of a subsidiary. *Id.* at 1159. There is only a sibling corporate relationship between Air Sea and Panalpina Gabon by virtue of Panalpina World's ownership of a

11

majority interest in each. Thus, it could be argued that an even stronger showing under the *Hargrave* factors should be required. Application of the *Hargrave* factors by analogy, however, fails to demonstrate, even minimally, that Panalpina Gabon controlled Air Sea or was an alter ego of Air Sea.

The *Hargrave* factors are (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations. *Id.* at 1160.

There is little evidence that any of the *Hargrave* factors tug in favor of finding that Panalpina Gabon controlled Air Sea. No business was done outside of Gabon by Panalpina Gabon; Panalpina Gabon's principal place of business is in Gabon and Air Sea's is in Switzerland; Panalpina Gabon did not dictate policy to Air Sea; Panalpina Gabon did not own any Air Sea stock; and neither controlled the other's daily operations. As this Court stated in *Hargrave*, the mere fact that a corporate relationship exists is not sufficient to warrant the assertion of jurisdiction over a related corporate entity. *Hargrave*, 710 F.2d at 1159. Therefore we are convinced that Dickson failed to carry the burden of establishing a prima facie showing of sufficient control to establish an alter-ego or agency relationship between Air Sea and Panalpina Gabon.

In conclusion, Disckson's argument falters at every turn:

12

Dickson assumes without adequately demonstrating that sufficient specific contacts were made with Louisiana to subject Panalpina Gabon to personal jurisdiction if Air Sea's acts as an intermediary can be imputed to Panalpina Gabon; Dickson asserts that Air Sea acted as Panalpina Gabon's agent, but fails to adduce facts showing that Panalpina Gabon controlled Air Sea; and Dickson contends that Panalpina Gabon's corporate affiliation with Air Sea is sufficient evidence of corporate control, but does not set forth facts to demonstrate control or alter ego status under the *Hargrave* factors.

B.

Unlike the specific jurisdiction analysis, which focuses on the cause of action, the defendant and the forum, a general jurisdiction inquiry is dispute blind, the sole focus being on whether there are continuous and systematic contacts between the defendant and the forum. *Helicopteros*, 466 U.S. at 414, 104 S.Ct. at 1872. *See* Mary Twitchell, *The Myth of General Jurisdiction*, 101 Harv.L.Rev. 610 (1988). Due process requires that "continuous and systematic" contacts exist between the State and the foreign corporation to exercise general personal jurisdiction because the forum state does not have an interest in the cause of action. *Helicopteros*, 466 U.S. at 415-16, 104 S.Ct. at 1872-73.

Despite the factually intensive nature of determining whether a defendant has "continuous and systematic" contacts, the Supreme Court has only addressed two cases that have directly dealt with general jurisdiction: *Perkins v. Benquet Consolidated Mining*

13

*Company*, 342 U.S. 437, 72 S.Ct. 413 (1952) and *Helicopteros Nacionales De Colombia, S.A. v. Hall*.

In *Perkins v. Benquet Consolidated Mining Company*, Benquet Consolidated Mining Co. ("Benquet Mining") was forced to halt its mining operations due to the Japanese occupation of the Philippine Islands during World War II. While the company was exiled from the Philippines, Benquet Mining's president, general manager, and principal stockholder returned to his home in Ohio. There he conducted the company's business, which included drawing salary checks, using two Ohio banks to hold company funds, holding several directors' meetings, and reestablishing business in the Philippines after the occupation. The president of Benquet Mining essentially "carried on in Ohio a continuous and systematic supervision of the necessarily limited wartime activities of the company." *Perkins*, 342 U.S. at 448, 72 S.Ct. at 419. Finding personal jurisdiction over Benquet Mining in Ohio, the Court held that these continuous and systematic contacts with Ohio were sufficient to hold them subject to personal jurisdiction in Ohio. *Id.*, 342 U.S. at 448, 72 S.Ct. at 420.

In *Helicopteros Nacionales De Colombia, S.A. v. Hall*, a helicopter accident occurred in Peru that killed American citizens. The relatives of those citizens sued the foreign defendant, Helicopteros, in Texas state court. The Court concluded that because the accident did not arise out of or relate to the foreign corporation's activities in the forum state, specific personal jurisdiction did not apply.

14

With respect to whether there was general personal jurisdiction, the Court found that Helicopteros had never been authorized to do business in Texas, never had an agent for service of process in Texas, never solicited business in Texas, never signed a contract in Texas (although it did contract with residents of Texas several times), never had any employee based in Texas, never owned any real property in Texas, never maintained an office in Texas, did not maintain any records in Texas, and did not have any shareholders in Texas. *Helicopteros*, 466 U.S. at 411-12, 104 S.Ct. at 1870-71.

Helicopteros, however, did have numerous contacts with Texas. For seven years, Helicopteros purchased helicopters, spare parts, and accessories from Bell Helicopters in Texas; Helicopteros sent prospective pilots to Texas training; and management and maintenance personnel of Helicopteros visited Bell in Texas. *Helicopteros*, 466 U.S. at 411, 104 S.Ct. at 1870.

Notwithstanding the contacts Helicopteros had with Texas, the Court held that the contacts did not "constitute the kind of continuous and systematic general business contacts the Court found to exist in Perkins." *Helicopteros*, 466 U.S. at 416, 104 S.Ct. at 1873. "[P]urchases and related trips, standing alone, are not a sufficient basis for a State's assertion of jurisdiction." *Id.*, 466 U.S. at 417, 104 S.Ct. at 1874.

Dickson attempts to show that Air Sea, along with Panalpina World and Panalpina-N.J., are the agents or alter egos of Panalpina Gabon in an effort to attribute continuous and systematic contacts

15

with Louisiana to Panalpina Gabon. Dickson alleges that Panalpina Gabon, through Air Sea, Panalpina World and Panalpina-N.J., solicited business in Louisiana, contracted with Louisiana residents, and advertised in Louisiana. Dickson attempts to establish an agency/alter-ego relationship by introducing volumes of exhibits, affidavits, and depositions into the record that purportedly show how Panalpina World, Air Sea, and Panalpina-N.J. disregarded corporate formalities with respect to Panalpina Gabon bringing about continuous and systematic contacts with Louisiana.

As we previously stated, the mere fact that a corporate relationship exists is not sufficient evidence to warrant the assertion of jurisdiction over a related corporate entity. *Hargrave*, 710 F.2d at 1159. There must be control exerted by the principal over the agents. *Donatelli*, 893 F.2d at 465-66. Although there is ample evidence of the Panalpina corporations having many dealings with each another, there is no evidence in the record of Panalpina Gabon exercising any control over Air Sea, Panalpina World, or Panalpina-N.J. These companies are separate entities organized under the laws of separate sovereigns. Indeed, the parties do not dispute that Panalpina Gabon does not have any offices, shareholders, or employees located in Louisiana, and that contracts with Louisiana companies were always performed in Gabon. The record shows that Panalpina Gabon simply exercised its right to structure its affairs in a manner calculated to shield it from the general jurisdiction of forums other than Gabon. *Bearry v. Beech Aircraft Corp.,* 818 F.2d 370, 375-76 (5th Cir. 1987). Furthermore,

16

Panalpina Gabon has not afforded itself the benefits and protections of the laws of Louisiana but has calculatedly avoided them. *Id.* at 376. In sum, because the alleged agency or alter ego relationship does not exist, Air Sea's actions in Louisiana could not and did not establish any contacts, much less "continuous and systematic" contacts, between Panalpina Gabon and Louisiana as required by due process to subject Panalpina Gabon to general personal jurisdiction in Louisiana. *Helicopteros*, 466 U.S. at 416, 104 S.Ct. at 1873.


C.

Dickson also argues that in personam jurisdiction over Panalpina Gabon should be established as a sanction for the failure to participate in good faith discovery.

In *Insurance Corporation of Ireland, Limited v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 102 S.Ct. 2099 (1982), the Supreme Court held that the failure to comply with discovery requests "may amount to a legal submission to the jurisdiction of the court, whether voluntary or not." *Id.*, 456 U.S. at 704-05, 102 S.Ct. at 2105. The Court stated:

> The expression of legal rights is often subject to certain procedural rules: The failure to follow those rules may well result in a curtailment of the rights. Thus, the failure to enter a timely objection to personal jurisdiction constitutes, under Rule 12(h)(1), a waiver of the objection. A sanction under Rule 37(b)(2)(A)

17

consisting of a finding of personal jurisdiction has precisely the same effect.

*Id.*

After a review of the record, we agree with the district court that Dickson's argument is "without merit and disingenuous." Panalpina Gabon participated in good faith discovery. The record reveals that Panalpina Gabon allowed a deposition to be taken of an employee in New Orleans and the employee brought records requested by Dickson from Gabon. Unlike *Baxuites* where the defendant did nothing to cooperate with the plaintiff's requests for discovery or the district court's orders, it is clear that Panalpina Gabon has cooperated sufficiently. Therefore, we affirm the district court's denial of sanctions under Rule 37(b)(2).

V.

After the district court dismissed Panalpina Gabon, the remaining defendant, Air Sea, sought dismissal on the grounds of forum non conveniens, which the district court granted.

An appellate court cannot reverse a district court's granting of a motion to dismiss for forum non conveniens unless the district court abused its discretion. *Reyno*, 454 U.S. at 255, 102 S.Ct. at 265. "[W]here the court has considered all relevant public and private interest factors, and where its balancing of these factors is reasonable, its decision deserves substantial deference." *Id.*, 454 U.S. at 257, 102 S.Ct. at 266.

In discussing the abuse of discretion standard of review, the

Supreme Court stated that "[t]he question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing." *National Hockey League v. Metropolitan Hockey Club*, 427 U.S. 639, 642, 96 S.Ct. 2778, 2780 (1976). Although a list of examples of abuses of discretion is difficult to formulate, generally, a district court abuses its discretion when it grants a motion to dismiss without oral or written reasons or if it fails to address and balance the relevant principles and factors. *In re Air Crash Disaster*, 821 F.2d at 1166. We will review the district court's decision under these established principles of appellate review.

The doctrine of forum non conveniens was "crystallized" in *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839 (1947) and its companion case *Koster v. (American) Lumbermans Mutual Casualty Company*, 330 U.S. 518, 67 S.Ct. 828 (1947). *Reyno*, 454 U.S. at 248 n. 13, 102 S.Ct. at 262 n. 13. The general principle of the doctrine "is simply that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized." *Gilbert*, 330 U.S. at 507, 67 S.Ct. at 842. The doctrine of forum non conveniens presupposes at least two forums where the defendant is amendable to process and simply furnishes criteria for choice between them. *Id.*, 330 U.S. at 506-07, 67 S.Ct. at 842. Therefore, once an adequate and available alternate forum is identified, several "private" and "public" interest factors must be balanced in order to determine if dismissal is warranted. *Id.*, 330

19

U.S. at 508, 67 S.Ct. at 843.  The "private" interest factors are:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witness; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.*

The "public" interest factors are:

> [T]he administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Reyno*, 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6, *quoting Gilbert*, 330 U.S. at 509, 67 S.Ct. at 843.

The Court has emphasized that no one private or public interest factor should be given conclusive weight, and that the plaintiff's initial choice of forum should usually be respected. *In Re Air Crash Disaster*, 821 F.2d at 1163.  The central focus of the forum non conveniens inquiry, however, is convenience. *Reyno*, 454 U.S. at 249, 102 S.Ct. at 262.

A.

The case law is clear that an alternate forum is adequate and available when the entire case and all of the parties come within the jurisdiction of that forum. *Syndicate 420 at Lloyd's London v. Early American Ins. Co.*, 796 F.2d 821 (5th Cir. 1986). As the district court observed, Dickson and its hull underwriters have previously brought an action against Air Sea in Switzerland, displaying that an adequate and available alternate forum exists in Switzerland. Although the substantive law governing the action may be different, the differences in substantive law should not be given conclusive weight in a forum non conveniens inquiry. *Reyno*, 454 U.S. at 248-49, 102 S.Ct. at 262. Notably, however, Switzerland does recognize causes of action for both contract and tort, and Dickson and its hull underwriters have adequately preserved their legal rights against Air Sea with the filing of the Zahlungsbefehlen.

The district court's conditional dismissal complies with *In re Air Crash Disaster Near New Orleans, Louisiana*, 821 F.2d 1147 (5th Cir. 1987), in which this Court stated that a district court must "ensure that a plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice and that if the defendant obstructs such reinstatement in the alternative forum that the plaintiff may return to the American forum." *Id.* at 1166.

B.

In balancing the private interest factors, the district court

21

correctly concluded that the focal point of the litigation against Air Sea is in Switzerland. Although the suit arose out of the damage to the DICKSON IV, which occurred off the coast of Africa, the allegations of Dickson necessitate an inquiry into the negotiations and brokering of the deal between Dickson and Panalpina Gabon. The transaction was negotiated and brokered in Switzerland and Gabon, the majority of the witnesses and employees that handled the matter are located in Switzerland, and documents and other evidence of the negotiation and brokering is located in Switzerland and Gabon. Furthermore, because Air Sea is based in Switzerland, it is amenable to service of process, and any judgment levied against Air Sea will be enforceable in Switzerland. Taking all of the private interests into consideration, we agree with the district court that they weigh heavily in favor of Switzerland as the most convenient forum.

Dickson maintains, on the other hand, that the appropriate forum should be either Louisiana or Gabon because the capsize of the vessel occurred in Gabon. We, however, do not focus solely on the capsize of the vessel to determine the most convenient place for the litigation between Dickson and Air Sea. The alleged negligence of Air Sea involves the coordination of services and the recommendation of Panalpina Gabon as the entity to repair the vessel. Indeed, the facts and evidence surrounding the capsize of the DICKSON IV, though relevant, are not of great consequence to a determination of Air Sea's alleged negligence.

Applying the public interest factors, the district court found

that the administrative burdens will be no greater on a court in Switzerland than on a court in Louisiana, that Gabonese or Swiss law must be applied, but that courts in Louisiana have an interest in this litigation because the plaintiffs are residents of Louisiana. Although the district court concluded that the public interest factors might point slightly toward Louisiana as the appropriate forum, the private interest factors favoring the Switzerland forum outweighed the public interest factors.

We do not find that the district court abused its discretion in granting Air Sea's motion to dismiss for forum non conveniens. Because the district court has considered all relevant public and private interest factors, and the balancing of the factors was reasonable, we will not disturb its judgment. *Reyno*, 454 U.S. at 257, 102 S.Ct. at 266.

## VI.

For the reasons assigned, we conclude that Panalpina Gabon is not subject to in personam jurisdiction in Louisiana and that the district court did not abuse its discretion in dismissing the claim against Air Sea for forum non conveniens. Therefore, we affirm the orders of the district court.

AFFIRMED.