**Maria Olivia VASQUEZ, et al**

v.

**BRIDGESTONE/FIRESTONE et al**

No. 1:01–CV–168.

United States District Court,
E.D. Texas,
Beaumont Division.

Aug. 7, 2001.

George Edmund Chandler, Lufkin, Dana R. Allison, Brownsville, Guy H. Allison, Corpus Christi, for Plaintiffs.

Edmundo O. Ramirez, Luis M. Cardenas, Ellis Koeneke & Ramirez, Mcallen, for Intervenor–Plaintiffs.

Morgan Lee Copeland Jr., Knox D. Nunnally, Vinson & Elkins, Houston, for Defendant Bridgestone/Firestone.

Kyle Harold Dreyer, Hartline Dacus Dreyer & Kern, Dallas, for General Motors Corp.

F Edward Barker, Roland L. Leon, Margery Huston, Barker Leon Fancher & Matthys, Corpus Christi, for Lucent Defendants.

## *MEMORANDUM OPINION*

COBB, District Judge.

### I. Background and Findings

On August 12, 1999, in Nuevo Leon, Mexico, the driver of a Chevrolet Suburban and seven passengers were in a single car accident. All of the persons in the car were residents and citizens of the Republic of Mexico. The passengers were employees of Servicios de Manufacturas de Monterrey, S.A. de C.V., a Mexican corporation, which had a contract with Lucent Technologies for furnishing operating and managerial support. The passengers had been to a training session in Matamoros, and were returning to Monterrey. The driver was an employee of Lucent Technologies de Mexico, a Mexican corporation. The driver and one passenger survived the accident. All others were killed.

The plaintiffs allege that, during the return trip, one of the tires manufactured by Bridgestone/Firestone, Inc. in Mexico, delaminated, causing the Suburban to go out of control and roll over several times. There is evidence that a tire did indeed delaminate.

On March 15, 2000, the plaintiffs brought suit in the United States District Court for the Southern District of Texas, Brownsville Division, against Lucent Technologies, Inc., Lucent Technologies Maquiladoras, Inc., Servicios de Manufacturas de Monterrey, S.A. de C.V., and Bridgestone/Firestone, Inc., in Civil Action No. B–00–040. Judge Tagle in that court dismissed the case on June 13, 2000, because Servicios "is a non-resident Mexican corpo-

rate business entity" with a principal place of business in Guadalupe, Nuevo Leon, Mexico. It was therefore a citizen of Mexico, which destroyed diversity jurisdiction.

The plaintiffs then filed suit in the 128th Judicial District of Orange County, Texas, against defendants Bridgestone/Firestone, Inc., General Motors Corp., Lucent Technologies, Inc., and Lucent Technologies Maquiladoras, Inc. Defendants received notice of the state lawsuit on February 20, 2001, and timely removed the action to this court on March 19, 2001, under diversity jurisdiction.

Unlike the Brownsville suit, the plaintiffs have not sued the driver or "Servicios," or Lucent Technologies de Mexico in this suit, nor are they likely to do so because diversity might vanish.

The plaintiffs and intervenors are suing under Texas state law, alleging various negligence causes of action as well as strict liability and warranty actions against the various defendants. Their underlying cause of action, however, is for wrongful death of the decedents in Mexico. The defendants, led by Lucent, contend that if this lawsuit belongs in a federal court in the United States, then Mexican law should be applied instead of Texas law. However, the defendants' most forceful argument is that this lawsuit should properly be filed in Mexico, the locale of the accident and the homeland of all of the victims and of all of the plaintiffs involved. In addition, the automobile was manufactured and sold in Mexico, and serviced and maintained in Mexico, and the tires were manufactured in Mexico. For those reasons, the defendants move to dismiss this action under the doctrine of *forum non conveniens.*

The Plaintiffs Vasquez, et al ("plaintiffs,") and Plaintiff–Intervenors Rodriguez De Luna, et al ("intervenors"),[1] have each

---

1. Because the intervenors' filings, motions     and responses closely track those of the plain-

respectively filed Motions to Extend Time to Respond to the defendants' motions to dismiss but have submitted "preliminary responses." All defendants have similarly filed motions to extend time to reply to any "final responses."

The court, having reviewed the defendants' motions and the responses on file on behalf of Plaintiffs Vasquez, et al, and Plaintiff–Intervenors Rodriguez De Luna, et al, is of the opinion that the motions to dismiss on the grounds of *forum non conveniens* be GRANTED. Further, the plaintiffs' and intervenors' motions to extend time to respond will be DENIED and all other existing motions will be DENIED as MOOT.

## II. Procedural Issues.

This case has seen a flurry of thirty-two separate motions entered by the various parties since it was removed here in March. Some, such as motions to appear *pro hac vice*, have been routinely ruled upon by the court. As of July 13, 2001, eighteen remained open, including the first motion to dismiss on *forum non conveniens* grounds by Lucent, filed on April 19, 2001. Because the issue of whether the action properly belongs in a court of law in Mexico will determine whether this case will proceed in the United States, this court scheduled a hearing on the *forum non conveniens* determination, along with all other pending motions, on July 27, 2001, and issued an Order that no further motions be filed pending that hearing and the ruling thereon.

Briefly addressing some of the earlier motions, the plaintiffs moved to remand their case to Texas state court on May 17, 2001, which the court denied. The plaintiffs and intervenors have subsequently moved for reconsideration of the denial, claiming that this case should be remanded to the Texas state court for various rea-

sons. Their accompanying motion to join the Bridgestone Corporation, a Japanese entity, as a defendant is untimely. The plaintiffs' claim that the U.S. corporation Bridgestone/Firestone, Inc., is merely an operating unit of the Japanese Bridgestone Corp. is unfounded. The motion would be denied even if there were no pending *forum non conveniens* analysis.

■ Similarly, the plaintiffs' claim that Bridgestone/Firestone, Inc., is a citizen of Texas because of its chemical plant in Orange County, Texas, and its Texas state franchise tax filing reflecting the address of that plant, all of which they claim destroys diversity, is meritless. Bridgestone/Firestone, Inc., is an Ohio corporation with its principal place of business in Nashville, Tennessee. Further, even if it were a Texas citizen, there would still be complete diversity because all of the plaintiffs are Mexican citizens and all of the defendants are U.S. citizens. The fact that the lawsuit was brought in Texas by Texas lawyers representing the plaintiffs' interests is immaterial to the diversity determination.

■ Because the defendants assert that Mexican law should be applied if this case were to go forward in a federal court under diversity jurisdiction, the plaintiffs insist that the case should be remanded to Texas state court because the jurisdictional amount in controversy requiring damages in excess of $75,000 cannot be met under the remedies provided in Mexican law. That contention is also meritless. The amount in controversy determination can be satisfied if it is facially apparent that the damages sought by the plaintiffs exceed the jurisdictional amount at the time of removal. *See Aguilar v. Boeing Co.*, 11 F.3d 55, 57 (5th Cir.1993). There, it was facially apparent that a wrongful

tiffs', the court will generally address the entire group as "plaintiffs."

death claim, including terror in anticipation of death, loss of companionship, and funeral expenses exceeded the jurisdictional amount at the time of removal. The same analysis pertains to the *Vasquez* plaintiffs' claims. In particular, the plaintiffs are proceeding in the U.S. courts because Mexican law limits recovery to a lower sum per individual. Thus, although their state lawsuit does not specify an amount of damages, they must be seeking more than that amount, which satisfies diversity jurisdictional requirements. Further, these plaintiffs sought a specific amount in their earlier complaint filed in and dismissed by the Southern District of Texas. In that complaint, they sought actual damages of $50,000,000, and punitive damages of $200,000,000. That easily exceeds the jurisdictional amount per individual plaintiff and satisfies the analysis denying remand. *See Id.* at 58.

The plaintiffs have filed "preliminary" responses to the *forum non conveniens* motions, but have also moved for an extension of time for one hundred and twenty days of virtually unfettered discovery followed by fourteen days in which to prepare their "final" responses. They contend they must conduct in-depth discovery of the entities involved and depose various affiants and witnesses to prepare their responses meaningfully. The plaintiffs complain that they were only made aware of the *forum non conveniens* motions filed by the three defendants on April 18, and should be allowed more time and discovery before responding to all three of the motions. However, a *forum non conveniens* motion should come as no surprise to the plaintiffs, because the same group of Lucent defendants made the same motion more than a year ago in the plaintiffs' original action filed in the Southern District of Texas before Judge Tagle dismissed the case for lack of diversity. Additionally, the burden of responding to three such motions is not great. They are nearly identical and the Bridgestone/Firestone and General Motors defendants joined in the arguments offered by Lucent. Further, as Bridgestone/Firestone has put very well, the discovery sought by the plaintiffs really goes to the *merits* of their case, not to the *forum non conveniens* analysis. Therefore, delay is unnecessary.

On August 3, 2001, the plaintiffs filed a "post-submission brief in support of the denial of the motions to dismiss for *forum non conveniens* " in which they argue that Texas state case law applies certain international treaties to permit citizens of foreign countries who are not Texas residents to bring tort-based lawsuits in Texas state courts. Specifically, the plaintiffs cite recent Texas Supreme Court and Texas Appellate Court cases for the proposition that dismissal under *forum non conveniens* is inappropriate in this case and that "an international treaty supports retention of this case." Their contention is ill-founded.

The plaintiffs argue that *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex.2000) applies several international treaties, notably including the International Covenant on Civil and Political Rights (the Covenant), to determine whether citizens of the U.S. and citizens of another country have "equal treaty rights" for access to each others' courts. In *Dubai*, the survivors of an Indian national, who was killed while working on an oil rig off the coast of the United Arab Emirates in the Persian Gulf, brought suit in Harris County, Texas, under Texas Civil Practice and Remedies Code § 71.031 in 1993. The Harris County court dismissed the case for lack of subject matter jurisdiction. The Texas Court of Appeals reversed and the Texas Supreme Court affirmed on the issue that the Covenant and other treaties granted equal access to the courts of signatory nations, which conferred subject matter jurisdiction on a court of general jurisdic-

tion in Texas. *See Dubai,* 12 S.W.3d at 81–83. Plaintiffs in this case propose that, therefore, the instant lawsuit is properly brought in this Court, removed from Orange County, Texas, state court, and should go forward. However, as the Texas Supreme Court noted in *Dubai,*

> The Kazis filed this action nineteen days before the effective date of Texas Civil Practice and Remedies Code section 71.051(a), which allows a Texas court to dismiss an action by a non-resident alien for an injury or death occurring outside Texas under the doctrine of *forum non conveniens.* Therefore, defendants did not seek to dismiss the case under that statute.

*See Id.* at 74 n. 2. The plaintiffs here also argue that *forum non conveniens* was held to be improper as applied to a foreign citizen in *Toubaniaris v. American Bureau of Shipping,* 981 S.W.2d 858 (Tex. App.—Houston [1st Dist.] 1998, pet. denied). However, in that case, the lawsuit pursued by the foreign national also predated the current Texas doctrine of *forum non conveniens.* The Texas Civil Practice and Remedies Code § 71.051(a) states:

> With respect to a plaintiff who is not a legal resident of the United States, if a court of this state, on written motion of a party, finds that in the interest of justice a claim or action to which this section applies would be more properly heard in a forum outside this state, the court may decline to exercise jurisdiction under the doctrine of forum non conveniens and may stay or dismiss the claim or action in whole or in part on any conditions that may be just.

In that regard, the Texas law of *forum non conveniens* matches the federal doctrine. Regardless whether the application of any international treaty creates subject matter jurisdiction within a Texas state court for a lawsuit by a foreign citizen, the Texas state doctrine of *forum non*

*conveniens* still applies. There is no doubt that this court also holds subject matter jurisdiction in this case. However, as is discussed below, the federal law will be applied in any *forum non conveniens* determination made within the U.S. Court of Appeals for the Fifth Circuit. Thus, the contentions of the plaintiffs' post-submission brief do not affect the *forum non conveniens* analysis in this case.

Having determined that the parties' various urgings contain no bar to a *forum non conveniens* determination, the court will turn to that topic.

### III. The Standard for Dismissal under *Forum Non Conveniens.*

The U.S. Supreme Court originally recognized the common law of *forum non conveniens* in federal courts as a method of dismissing damages actions or of transferring venue from a jurisdiction to another where venue was more appropriate. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). Congress has since amended the transfer of venue function of the *forum non conveniens* doctrine by enacting 28 U.S.C. 1404(a). *See Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 722, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). However, the U.S. Supreme Court continues to recognize that federal courts have the power to dismiss damages actions under *forum non conveniens* analysis where "the alternative forum is abroad." *Id.*

■ When reviewing an action under diversity jurisdiction, a federal court in the Fifth Circuit must employ the federal law of *forum non conveniens* instead of state law. *See In re Air Crash Disaster Near New Orleans, Louisiana on July 9, 1982,* 821 F.2d 1147, 1159 (5th Cir.1987), *vacated on other grounds and remanded, Pan American World Airways, Inc. v. Lopez,* 490 U.S. 1032, 109 S.Ct. 1928, 104 L.Ed.2d

400 (1989), *reinstated in relevant part, In re Air Crash Disaster Near New Orleans,* 883 F.2d 17 (5th Cir.1989).

The Fifth Circuit will review a district court's decision on a motion to dismiss for *forum non conveniens* for a clear abuse of discretion. *See McLennan v. American Eurocopter Corp., Inc.,* 245 F.3d 403, 423 (5th Cir.2001). Generally, a court would be found to have abused its discretion when it grants a motion to dismiss without oral or written reasons or if it fails to address and balance the relevant principles and factors. *See Dickson Marine, Inc., v. Panalpina, Inc.,* 179 F.3d 331, 341 (5th Cir.1999), *McLennan,* 245 F.3d at 424 (the Fifth Circuit will review the district court's compliance with the relevant analytical framework and will not perform a de novo analysis nor make the initial determination for the district court.)

The premise underlying the doctrine of *forum non conveniens* is "that a court may resist imposition upon its jurisdiction even when jurisdiction is authorized." *See McLennan,* 245 F.3d at 423 (citing *Dickson Marine,* 179 F.3d at 341). The doctrine presupposes at least two forums where the defendant or defendants are amenable to process and simply furnishes criteria for choice between them. *Id.* at 424.

The framework for analysis under *forum non conveniens* requires that the defendant seeking dismissal must first establish that there is an alternative forum which is both available and adequate. *Id.* A foreign forum is available when the entire case and all parties can come within the jurisdiction of that forum. *Id.* A foreign forum is adequate when the parties will not be deprived of all remedies, even though they may not enjoy the same benefits as they might receive in an American court. *Id.; Aguilar v. Boeing Co.,* 806 F.Supp. 139, 143 (E.D.Tex.1992) (citing *Pe-*

*rusahaan Umum Listrik Negara v. M/V Tel Aviv,* 711 F.2d 1231 (5th Cir.1983)).

Once the movant establishes that there is an alternative forum which is both available and adequate, the movant must show that dismissal is warranted because of the balance of certain private and public interests. *See McLennan,* 245 F.3d at 423. The relevant private interest factors include: the relative ease of access to sources of proof; the availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; the possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Id.* The relevant public interest factors include: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty. *Id.*

This court will proceed on the basis so described.

## IV. Analysis.

### A. Availability and Adequacy of an Alternative Foreign Forum.

There are two possible forums for this action, the United States and Mexico. Jurisdiction in this court is not in question. Because all of the activity took place in Mexico-including the manufacture, purchase, and operation of the Suburban and its tires-and all of the plaintiffs are, and all of the decedents were citizens of Mexico,

that country is certainly an alternative forum to the United States.

▆▆ A defendant's submission to the jurisdiction of an alternative forum renders that forum available. *See Aguilar,* 806 F.Supp. at 143 (citing *Veba–Chemie, A.G. v. M/V Getafix,* 711 F.2d 1243, 1245 (5th Cir.1983)). In this case, the Lucent defendants, Bridgestone/Firestone, Inc., and General Motors have all agreed to submit to the jurisdiction of Mexico, have certified that they will abide by the rulings of that jurisdiction, and will pay any recovery adjudged against them. Therefore, Mexico is an available forum to hear the action.

▆▆ Mexican law has been ruled to be adequate in a wrongful death action in this and other federal courts. *See Aguilar,* 806 F.Supp. at 143; *David Rodriguez Diaz v. Mexicana de Avion, S.A.,* No. SA–86–CA–1065, 1987 WL 275695, 1987 U.S. Dist. LEXIS 13399, at *4–9 (W.D. Tex. Jan 23, 1987), *aff'd mem.* 843 F.2d 498 (5th Cir. 1988), *cert. denied,* 488 U.S. 826, 109 S.Ct. 76, 102 L.Ed.2d 53 (1988). Here, the plaintiffs are proceeding under negligence and strict liability actions. Mexico recognizes wrongful death actions but not strict product liability. The lack of a strict product liability cause of action in a foreign forum does not per se render that forum inadequate. *See David Rodriguez Diaz,* 1987 WL 275695, 1987 U.S. Dist. LEXIS 13399, at *8, citing *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254–55, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). The *Rodriguez Diaz* court specifically ruled that the lack of a strict liability cause of action in Mexican law did not render Mexican law inadequate. Further, the fact that a plaintiff may recover less in a wrongful death action in Mexico than in the United States does not render that system of laws inadequate. *Id.*

There is no reason to believe that Mexican law is inappropriate. The court will turn to a balancing of the private and public factors.

**B. Private and Public Factors.**

▆▆ Preliminarily, while it is true that a plaintiff's choice of forum should be given deference, when that plaintiff is a citizen of a foreign country who is trying to avail himself of the more favorable laws of the United States, his choice will be given less deference. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 255–56, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

*Piper Aircraft Co. v. Reyno, supra,* is particularly instructive on the issue before this court. A five-place private plane crashed in Scotland, killing all aboard. Suit was filed in Pennsylvania Federal Court and the district court, after a full analysis, dismissed the case. The Court of Appeals for the Third Circuit reversed because the remedies and damages available in Scotland were not as generous as in the United States, either under Pennsylvania law or Ohio law, holding that was the determining factor. The Supreme Court reversed.

The Court held:

The Court of Appeals erred in holding that plaintiffs may defeat a motion to dismiss on the ground of *forum non conveniens* merely by showing that the substantive law that would be applied in the alternative forum is less favorable to the plaintiffs than that of the present forum. The possibility of a change in substantive law should ordinarily not be given conclusive or even substantial weight in the *forum non conveniens* inquiry. (at p. 247, 102 S.Ct. 252)

and:

Except for the court below, every Federal Court of Appeals that has considered this question after *Gilbert* has held that dismissal on grounds of *forum non conveniens* may be granted even though

the law applicable in the alternative forum is less favorable to the plaintiff's chance of recovery. (at p. 250, 102 S.Ct. 252)

Further:

Upholding the decision of the Court of Appeals would result in other practical problems. At least where the foreign plaintiff named an American manufacturer as defendant, a court could not dismiss the case on grounds of *forum non conveniens* where dismissal might lead to an unfavorable change in law. The American courts, which are already extremely attractive to foreign plaintiffs, would become even more attractive. The flow of litigation into the United States would increase and further congest already crowded courts. (at p. 251, 102 S.Ct. 252)

and:

It suggested that defendants seeking *forum non conveniens* dismissal must submit affidavits identifying the witnesses they would call and the testimony these witnesses would provide if the trial were held in the alternative forum. Such detail is not necessary. (at p. 258, 102 S.Ct. 252)

In addition, in *Piper Aircraft*, the pilot's estate was not a defendant, nor was his employer. There, the court held that one forum is preferable in order that all parties could be before one court. The same is applicable here. The driver and Servacios and L.T. Mexico could all be joined in one action, if appropriate under the laws of Mexico.

In addition, the judges in Mexico are required to be "learned in the (civil) law." This court, not learned in civil law of Mexico, would be required to rely on expert testimony of lawyers admitted in Mexico and be faced with conflicting opinions of those "experts."

## 1. Private factors.

All of the events leading to this action took place in Mexico. The decedents were all Mexican citizens; the plaintiffs are all Mexican citizens; the accident occurred in Mexico in a vehicle which was built, purchased, and maintained in Mexico and was outfitted with tires which were made in Mexico. All of the eyewitnesses, medical and law enforcement personnel and physical evidence are in Mexico. It would be difficult and expensive to produce those witnesses and transport the evidence to a court in the United States. Under these circumstances, Mexico is the most appropriate forum. *See Aguilar*, 806 F.Supp. at 144, *aff'd Aguilar v. Boeing Co.*, 11 F.3d 55 (5th Cir.1993). In *Aguilar*, a Mexicana Airlines Boeing 727 flew nonstop from Chicago's O'Hare airport to Guadalajara, Mexico, and then to Mexico City. The following day, it crashed after takeoff, killing its crew and passengers. Most of the plaintiffs in that case were Mexican citizens; evidence and witnesses concerning damage issues were also located in Mexico. Some evidence concerning the aircraft's design and manufacture might have been located in the United States. However, because the bulk of the evidence and witnesses were in Mexico, and the fact that the crash occurred in Mexico and involved mainly Mexican citizens, the invocation of *forum non conveniens* was appropriate and the case was dismissed from the Eastern District of Texas. *Id.* Unlike the ties to the U.S. in *Aguilar*, the present case has virtually no tie to the United States. It is similarly appropriate to dismiss under *forum non conveniens.*

This court has no power of compulsory process over citizens of Mexico. As noted, all witnesses of the accident, surviving victims, medical and police personnel, forensic analysts and other unknown individuals reside in Mexico. The plaintiffs have as-

serted that they, the plaintiffs will be available and present in a U.S. court. However, they cannot guarantee the availability of any of the necessary witnesses who might be unwilling to appear, and this court cannot summon them. The court has previously noted that the testimony of unwilling nonparty witnesses in Mexico can only be obtained to aid in a United States litigation through letters rogatory pursuant to the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters, Mar. 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444, 847 U.N.T.S. 231. The procedure presents difficulties in obtaining adequate deposition testimony, is expensive, and is time consuming. Further, relying on depositions instead of live testimony would deprive the court and the trier of fact from evaluating the credibility of the witnesses. *See Aguilar,* 806 F.Supp. at 140. Additionally, the cost of transporting and domiciling such a group would be expensive for those witnesses who would be willing to appear in person. This factor strongly favors dismissal to allow the plaintiffs to proceed in Mexico.

Viewing the location of the accident could be appropriate, if unlikely, to a determination of this action. Although courts and juries in these types of cases are usually informed of the circumstances of vehicular accidents by photographs, models and animations, physical viewing of the locale of the accident does occur. If it were necessary in this case, such a viewing would be virtually impossible due to the time and cost it would take to transport all court personnel and the jury to the location in Mexico.

Nearly all of the reports detailing the accident are in Spanish. A few have been translated but are subject to verification. The translation process is a lengthy and expensive one. Additionally, most of the witnesses who are Mexican citizens who

are willing to appear in person would require translators to testify, again at greater expense and at the risk of loss of accuracy. Such translation requirements would certainly slow the case and perhaps introduce confusion among jurors.

In balance, all of the private factors indicate that Mexico is a more appropriate forum and that this case should be dismissed.

## 2. Public factors.

This court currently carries a docket including over four hundred civil and over one hundred and twenty criminal cases. The addition of this case would significantly burden the docket in terms of time and resources.

According to the statistics of the Clerk's office, there have been filed in this court 416 civil cases and 92 criminal cases in the 12–month period from July 1, 2000, to June 30, 2001. A number of those cases include complicated patent suits, copyright suits, class action suits, suits seeking class action status, qui tam actions under the False Claims Act, RICO suits, and the usual federal court mix of employment discrimination suits, wage and hour suits, federal tort claims suits, maritime and admiralty suits, product liability suits, contract suits, negligence suits, and ERISA suits.

There is virtually no local interest in deciding this controversy. Plaintiffs argue that, because Bridgestone/Firestone, Inc., has a chemical plant in Orange, Texas, the U.S. in general and southeast Texas in particular are appropriate forums. However, the Orange County plant is not the company's principal place of business and does not even produce tires; no local citizen was involved in any aspect of the decedents' accident; all the decedents and all the plaintiffs are citizens of Mexico; the accident occurred in Mexico in a vehicle built and bought in Mexico on tires manu-

factured in Mexico; and the accident was investigated in Mexico. It would be manifestly unfair to impose the requirement on a community in southeast Texas to provide a jury to hear such a case.

The plaintiffs assert that Texas state law should be employed. However, under Texas conflict of laws analysis and the same circumstances just noted, Mexican law would have to be employed in a federal diversity action.

According to Mexican civil law, as indicated by the affidavits of three Mexican attorneys, Mexico follows civil law based generally on the Institutes of Justinian. That is that in injury to persons cases, the *lex loci delicto* is applied. The *lex loci delicto* here is located in the Republic of Mexico, the place of the unfortunate accident, the place of the manufacture and maintenance of the vehicle, the place of the manufacture and sale of the tires, and the fault (if any), of the driver. There is absolutely no real nexus to Texas in this dispute, except that plaintiffs' lawyers are located in Texas.

> In all conflicts cases sounding in tort, the Texas courts apply the law of the forum with the most significant relationship to the occurrence and the parties. *Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex.1979). *Duncan v. Cessna Aircraft Company,* 665 S.W.2d 414, 421 (Tex. 1984). The most significant relationship test is applied to wrongful death cases. *Total Oilfield Services, Inc. v. Garcia,* 711 S.W.2d 237 [, 239] (Tex.1986). The relevant contacts to be considered in determining which forum has the most significant relationship are: (1) the place where the injury occurred, (2) the place where the conduct causing the injury occurred, (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties, and (4) the place where the relationship between the parties is centered.

See *Rodriguez Diaz,* 1987 WL 275695, 1987 U.S. Dist. LEXIS 13399, at \*4–5; *See also Torrington Co. v. Stutzman,* 46 S.W.3d 829 (Tex. 2000) (recent affirmation that Texas conflict of law analysis is founded in the RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 145 (1971) and that for tort analysis, the four factors enunciated in *Rodriguez Diaz* are relevant). All of these factors are met by the circumstances of this case to establish Mexico as the forum with the most significant relationship to the plaintiffs and their decedents' accident. Because Mexican law would be applied, a Mexican court which understands that law far better than this one should hear the case. That would also avoid any conflict between the laws of Mexico and the framework of U.S. federal procedural law.

All of the public interest factors indicate that Mexico is a more appropriate forum and that this case should be dismissed.

## V. Conclusion

*Aguilar* was similar to this case in another respect. Various of the *Aguilar* plaintiffs chased their lawsuit across the United States, attempting to find a forum that would try the case. It had been dismissed from the Western District of Texas under *forum non conveniens. See David Rodriguez Diaz v. Mexicana de Avion, S.A.,* No. SA–86–CA–1065, 1987 WL 275695, 1987 U.S. Dist. LEXIS 13399 (W.D.Tex. Jan.23, 1987). They subsequently brought their suit in the Eastern District of Texas under the name of another of the plaintiffs. This Court dismissed the action on two grounds. First, under the doctrine of direct estoppel, the Court held that the preclusive effect of the Western District's dismissal prevented the plaintiffs from asserting the same issues in another forum. Second, the Court applied the *forum non conveniens* analysis once again and found independently that it was appropriate to dismiss. The Fifth Circuit

affirmed on both grounds. *See Aguilar,* 11 F.3d 55. Here, the *Vasquez* plaintiffs brought suit in the Southern District of Texas. Rebuffed, they turned to the Texas state court in Orange County and were removed to this jurisdiction. A judgment of dismissal under *forum non conveniens* here should act to preclude a future lawsuit brought elsewhere in this country.

For all the reasons in the above analysis, the defendants' motions to dismiss will be granted. It is, therefore,

ORDERED, that the three Motions to Dismiss on the grounds of *Forum Non Conveniens* are hereby GRANTED, and the dismissal will be with prejudice.

It is, further, ORDERED that all other existing motions in this case are hereby DENIED as moot. It is, further,