557 So.2d 311 (1990)
DUCKWORTH WOODS TIRE SERVICE, INC.
v.
Robert B. JOHNSON.
No. 89-CA-0098.
Court of Appeal of Louisiana, Fourth Circuit.
January 16, 1990.
Roger J. Larue, Jr., Metairie, for plaintiff.
Ralph E. Smith, Deutsch, Kerrigan & Stiles, New Orleans, for defendant.
Before BYRNES, ARMSTRONG and PLOTKIN, JJ.
ARMSTRONG, Judge.
Defendant, Robert B. Johnson appeals from a trial court judgment against him and in favor of plaintiff, Duckworth-Woods Tire Service, Inc. holding him personally liable for the debts of certain closely-held corporations. We now reverse.
This case originally involved a suit by Duckworth against Smith & Johnson (Shipping) Inc., for the value of goods and services contracted by that corporation. In June, 1982, judgment was rendered in favor of Duckworth and against Smith & Johnson (Shipping) Inc. in the amount of $9,860.40. That judgment was subsequently affirmed by this court. Duckworth-Woods Tire Service, Inc. v. Smith & Johnson (Shipping) Inc., 430 So.2d 207 (La. App. 4th Cir.1983).
Duckworth subsequently took two judgment debtor depositions of defendant in the case at bar, Robert Johnson, who was an officer (president), a director, and a 40% shareholder of Smith & Johnson (Shipping) Inc. Smith & Johnson (Shipping) Inc. is or was a New York corporation with no offices in Louisiana. It did not operate in Louisiana. However, Smith & Johnson (Shipping) had two wholly-owned subsidiaries which had offices and operated in New Orleans, Louisiana. These corporations were Smith & Johnson (New Orleans) Inc., and R.G. Travel Executives, Inc., which did *312 business in New Orleans as S.J. Travel Executives, Inc.
At the October, 1982 deposition it was learned that Smith & Johnson (New Orleans) Inc. and R.G. Travel Executives, Inc. were indebted to Smith & Johnson (Shipping) Inc. In July, 1983 plaintiff obtained writs of fieri facias and cited the two subsidiaries as garnishees. In answers to the accompanying interrogatories Smith & Johnson (New Orleans) Inc. and R.G. Travel Executives, Inc. admitted their indebtness to Smith & Johnson (Shipping), Inc., respectively, in the amounts of $46,500.00 and $10,000.00, representing unsecured loans.
On October 12, 1983, a temporary restraining order was issued by the trial court prohibiting any action by the subsidiaries or their parent corporation relating to the transfer, alienation or encumbrance of stocks of the two subsidiaries. On October 28, 1983 a preliminary injunction was issued prohibiting same. Sometime thereafter, Duckworth purchased, for $341.00 at a sheriff's sale, the $56,500.00 indebtedness owed by the two subsidiary corporations.
Unknown to the plaintiff or the court, on September 30, 1983, defendant, Johnson, obtained a pledge of 100% of the stock of both R.G. Travel Executives, Inc. and Smith & Johnson (New Orleans) Inc., as well as 51% of the stock in a Houston-based subsidiary. The minutes of the board of directors meeting at which this action was approved reflect that the pledge was given to secure personal loans made, or to be made, by Johnson to Smith & Johnson (Shipping) Inc. in the amount of $150,000.00. At the time of the pledge the corporation was in default on loans of $120,000.00. The record evidence establishes that Johnson did write personal checks payable to the corporation in amounts totalling $170,000.00. All of the checks were negotiated.
Duckworth subsequently instituted this action against Robert B. Johnson, claiming that the pledge of the stock of the two subsidiaries was in fraud of the creditors of Smith & Johnson (Shipping) Inc., which, it is alleged, was insolvent. In a supplemental and amending petition Duckworth claimed that the subsidiary corporations had been rendered insolvent by the actions of Johnson. For these reasons it was asserted by Duckworth that Johnson was personally liable to it for the amount of the original judgment, as well as the indebtedness it had purchased from the two subsidiary corporations.
It was stipulated by counsel for both sides that the matter would be submitted for a decision by the trial court on the documentation contained in the record, and depositions. The trial court found that under "Louisiana Revised Statute 12:92(d), 12:93(d) and the General Corporation Law, as well as the Corporation Law of the State of New York ... Johnson made an unlawful distribution of corporate assets to himself, as an officer, director and sharholder [sic], effectively taking out of reach of Duckworth any of the assets of the corporations mentioned." The decision was grounded in the finding that the corporation was insolvent when the pledge was given. No specific New York statutes were cited by the court. The "General Corporation Law" was cited as Fletcher Cyclopedia Corporations, Permanent Edition, Sections 908 and 7469. The trial court further found that the minimum valuation of the incorporeal rights (the indebtness purchased by Duckworth) was $35,000.00. Judgment was subsequently rendered in favor of Duckworth and against Johnson in the amount of $35,000.00.
On appeal Johnson cites several assignments of error. He claims that (1) the trial court did not have proper subject matter jurisdiction to resolve the issues in the case at bar, (2) the trial court's conclusions of law were not supported by the findings of fact as set out in the reasons for judgment, and (3) the trial court otherwise erred in finding that Johnson was personally liable for corporate debts.
Johnson first argues that the trial court did not have proper subject matter jurisdiction over this action. La.C.C.P. art. 2 defines subject matter jurisdiction as:
"[T]he legal power and authority of a court to hear and determine a particular *313 class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value of the right asserted."
Johnson's argument is premised on his position that the object of the plaintiff's demand is not a proper one for a Louisiana court to consider. He claims that Louisiana courts do not have jurisdiction over the internal affairs of a corporation organized in another state, New York, and operating and performing its normal functions pursuant to the laws of that state. The action complained of by Duckworth, Smith & Johnson (Shipping) Inc. pledging the stock of the two subsidiary corporations to Johnson as security for the loans, took place in the state of New York.
There is no question but that the trial court had personal jurisdiction over the defendant; he raised no declinatory exception to the court's personal jurisdiction. La. C.C.P. art. 925. Defendant's argument as to the court's subject matter jurisdiction is somewhat misplaced. The cases cited by him deal with the power of a state to enact and enforce substantive laws affecting nonresidents. We agree that it was not proper for the trial court to apply Louisiana corporate law to the internal activities of an out-of-state corporation which itself had no connection with Louisiana. However, it is clear that the trial court had legal power and authority to hear and determine the class of actions to which this case belongs. But, the court should have applied strictly New York and general corporate law in resolving the issues.
Accordingly, the trial court erred in finding that Johnson violated La. R.S. 12:92(D) and 12:93(D). We must now examine the applicable general corporation law and New York corporation law to determine whether the trial court could have found Robert Johnson personally liable on the indebtedness purchased by Duckworth.
New York Business Corporation Law, Section 510 (McKinney 1989) provides in pertinent part:
"(a) A corporation may ... make ... distributions in ... its property, including the shares ... of other corporations,... except when currently the corporation is insolvent or would thereby be made insolvent...."
New York Business Corporation Law, Section 719 (McKinney 1989) provides:
"(a) Directors of a corporation who vote for or concur in any of the following corporate actions shall be jointly and severally liable to the corporation for the benefit of its creditors or shareholders, to the extent of any injury suffered by such persons, respectively, as a result of such action:
(1) The declaration of any ... distribution to the extent that it is contrary to the provisions of paragraph (a) ... of section 510...." (emphasis added)
Fletcher Cyclopedia Corporations, Sections 7407-7416 (Permanent Edition, 1986) deal with conveyances to hinder, delay or defraud creditors. All of the remedies mentioned in these sections provide that the conveyances may be set aside by the aggrieved creditor. Nothing is stated about the personal liability of directors or officers.
Under Fletcher Cyclopedia Corporations, Section 908 (Permanent Edition, 1986), a solvent corporation may borrow money from an officer or director and pledge corporate property as security. Such a pledge will be closely scrutinized upon when attacked by a creditor upon the insolvency of the corporation, and "will not be sustained" if it was made, not in good faith and for a bona fide debt, but with intent to hinder and delay or defraud creditors.
Fletcher Cyclopedia Corporations, Section 7469 (Permanent Edition, 1986) states that when a corporation becomes insolvent, the directors and other managing officers are prohibited from securing to themselves any preference or advantage over other creditors.
New York Debtor and Creditor Law, Section 270 et seq. (McKinney 1989) deals with fraudulent conveyances. Section 278(1) of that chapter allows a creditor to have a fraudulent pledge set aside; it further gives the creditor the right to disregard *314 the pledge and attach or levy execution upon the property given as security.
New York Business Corporation Law, Section 720 (McKinney 1989) gives a creditor the right to bring an action against a director or officer of a corporation to set aside an unlawful pledge where the transferee knew of its unlawfulness.
The trial court found that Smith & Johnson (Shipping) Inc. was insolvent and that the pledge to Johnson of the stock of the two subsidiary corporations amounted to an illegal distribution of corporate assets. As previously discussed, we feel the trial court erred in applying Louisiana law. Under the above cited law we find that the trial court erred in finding that Johnson was personally liable to Duckworth for the value of the stock of the two corporations.
Under New York Business Corporation Law, Sections 510(a) and 719, a director can be held liable only "to the corporation" for the benefit of its creditors. There is nothing in the statute subjecting a director to personal liability to a creditor. More importantly, we decline to characterize a pledge of corporation property as a distribution. A distribution contemplates a change in ownership. Ownership of the pledged stock did not change upon the effectuation of the pledge. Ownership remained with Smith & Johnson (Shipping) Inc. For this reason also, if La.R.S. 12:92(D) and 12:93(D) had been applicable, no liability would have attached to Johnson since such liability is predicated upon an unlawful distribution of corporate assets. Finally, there is no conclusive evidence in the record that any of the corporations, either the parent or its subsidiaries, were insolvent at the time the pledge was given, or were "thereby" rendered insolvent.
None of the other cited New York and general corporation laws pertaining to the granting of security for corporate debts give to an aggrieved creditor a right against directors, officers or shareholders to recover the value of corporate property given as a pledge. Even if the security was given in fraud of creditors, at a time when the corporation was insolvent, the remedy available to such a creditor is an action to set aside the pledge. In his memorandums submitted at the trial court level, as well as his brief on appeal, defendant cites this as the proper remedy. Also, as previously cited, the aggrieved creditor could disregard the conveyance and seize the property.
For the foregoing reasons we reverse the judgment of the trial court and dismiss plaintiff's suit. All costs of this appeal are assessed against the plaintiff.
REVERSED.
BYRNES, J., concurs with result.
PLOTKIN, J., concurs with written reasons.
PLOTKIN, Judge, concurring with written reasons:
The important issue in this case is whether defendant Robert B. Johnson, a New York domiciliary and a director, officer and shareholder of a New York corporation, can be held personally liable, under New York or Louisiana corporate law, to a Louisiana creditor. The majority's recital of the events leading up to this lawsuit is correct.
Johnson originally filed an objection to the jurisdiction of the court, without specifying a particular subsection. He does not contest the court's jurisdiction over his person under La.C.C.P. arts. 6-7, but challenges the court's subject-matter jurisdiction over the cause of action. La.C.C.P. art. 925(6). He makes three allegations: (1) that Louisiana courts lack jurisdiction over foreign corporations that are organized, operating and performing normal corporate functions pursuant to laws of the foreign states which regulate them, (2) that New York corporate law applies in this case, which deprives Louisiana courts of subject-matter jurisdiction, and (3) that Louisiana corporate law cannot be applied to the corporation or to his personal acts in this case.
As noted by the majority, subject-matter jurisdiction is defined by La.C.C.P. art. 2 as "the legal power and authority of a court to determine a particular class of actions or proceedings, based upon the object of the demand, the amount in dispute, or the value *315 of the right asserted." Despite the fact that he presents three arguments, Johnson's claim that Louisiana courts lack subject-matter jurisdiction over the instant controversy is actually premised on one factthe fact that the actions which the plaintiffs contest, the pledging of the stock of the two subsidiary corporations to Johnson as security for loans, occurred in New York. Nowhere does Johnson claim that Louisiana courts lack power or authority to decide cases of this type. Nowhere does he claim that the object of the demand, the amount in dispute or the value of the right asserted are outside the authority of Louisiana courts. Johnson's arguments would be more effective were he contesting venue; however, he waived all objections to venue when he filed the exception to subject-matter jurisdiction without asserting the possible venue problem. La.C.C.P. arts. 925-926.
Consideration of Johnson's specific arguments also leads to the conclusion that no subject-matter jurisdiction problem exists in the instant case. His first argument is that Louisiana courts lack jurisdiction over foreign corporations. However, all of Johnson's assertions on this issue concern whether Louisiana courts have personal jurisdiction over New York corporations and have no bearing on whether the Louisiana court has subject-matter jurisdiction over the controversy. Like the possible objections to venue, all objections to personal jurisdiction have been waived. La.C. C.P. arts. 925-926. Additionally, even if the issue had not been waived, Johnson would have no right to assert an objection to personal jurisdiction over the corporation. Therefore, Johnson's first argument has no merit.
Second, Johnson argues that New York law applies to the controversy and that this fact deprives Louisiana courts of subject-matter jurisdiction. This is merely a conflict-of-law problem, which was correctly decided by the majority. Generally, substantive rights are determined by the law of the place where the action arose, in this case New York. Patterson v. Patterson, 436 So.2d 603, 604 (La.App. 4th Cir.1983). Therefore, New York law must control the result in the instant case. However, this fact does not deprive the Louisiana court of subject-matter jurisdiction over the controversy; thus Johnson's second argument is without merit.
Third, Johnson argues that Louisiana corporate law cannot be applied to the foreign corporation or to his personal activities in this case. He states specifically that LSA-R.S. 12:92(D), which deals with liability of directors and officers for unlawful distributions of income, and LSA-R.S. 12:93(D), which deals with the liability of subscribers and shareholders for unlawful distributions of income, may not be applied extraterritorially. The majority fails to address this contention. As stated above, the general rule is that substantive rights must be decided under the law of the place where the action arose. Patterson, supra. However, since the majority corrected decided the controversy under New York law, the issue is now moot. The fact that the trial court improperly applied Louisiana law in deciding the controversy does not affect subject-matter jurisdiction. Therefore, Johnson's third argument contesting the Louisiana court's subject-matter jurisdiction is without merit.
Because New York law provides no right of action in favor of an aggrieved creditor against directors, officers and shareholders of the corporation for the value of property given as a pledge to secure debts, Johnson is not liable to the plaintiffs herein. As noted by the majority, the proper remedy would be a suit to set aside the pledge.