**Charles TURAN, et al.**

v.

**UNIVERSAL PLAN INV. LTD., et al.**

**No. Civ.A. 99–1096.**

United States District Court, E.D. Louisiana.

Nov. 9, 1999.

Walter C. Thompson, Jr., Mark Powell Seyler, Jan K. Frankowski, Barkley & Thompson, LC, New Orleans, LA, William Wells Hall, William W. Hall, Attorney at Law, Metairie, LA, for Plaintiff.

Paul Lee Peyronnin, Michael David Kurtz, Phelps Dunbar, LLP, New Orleans, LA, for Defendant.

## ORDER AND REASONS

FALLON, District Judge.

Before the Court is the motion to dismiss of defendants Tyson Foods, Inc. and Universal Plan Investments Limited pursuant to Rule 12 of the Federal Rules of Civil Procedure. For the following reasons, the motion is GRANTED.

## I. BACKGROUND

The present case arises from the efforts of Louisiana resident, Charles Turan, and his Louisiana corporation Deep Ocean Resource Developers ("DORD"), to establish a seafood processing venture in China. In October, 1990, DORD entered into a processing agreement with Shanghai Fish Processing Factory of Shanghai, China to create a joint venture for the purpose of processing and marketing of fish products. To further their business venture in China, the plaintiffs created the defendant corporation Universal Plan Investments Limited ("UPI") and incorporated it in Hong Kong in December, 1990.

UPI entered into an agreement with the Shanghai Fish Processing Factory in March, 1991 to establish a joint venture corporation called Ocean Wealth Fish Products Corporation ("Ocean Wealth"). The plaintiffs marketed the fish processing services of Ocean Wealth and attracted the interest of Arctic Alaska Fisheries Corporation ("Arctic Alaska"), a large deep sea fishery based in Seattle, Washington. Arctic Alaska expressed interest in the fish processing project and acquired eighty percent ownership of UPI by November, 1991, while Turan retained the remaining twenty percent interest.

The defendant Tyson Foods, Inc. ("Tyson") later merged with Arctic Alaska and acquired its ownership interest in UPI. According to the plaintiffs, Tyson then employed the directors of UPI and managed the role of UPI in the Ocean Wealth joint venture project. The plaintiffs believe that UPI's board meetings occurred in Seattle rather than Hong Kong and that Arctic/Tyson rather than UPI named the directors of the Ocean Wealth project. They also contend that in April, 1997, Tyson Foods caused UPI to issue 23,992 shares of voting stock and 5,998 shares of non-voting stock in UPI to Tyson's subsidiaries. Following this stock offering, Turan's twenty percent share of UPI was reduced to less than one percent.

The plaintiffs argue that the defendants issued stock in UPI without notice and caused them damages in the form of lost profits that could have been realized from the Ocean Wealth joint venture, lost investment in UPI, and lost opportunity for profits from other projects. They claim a breach of fiduciary duties including mismanagement and waste and/or breach of contract and quasi-contractual obligations, and continuing tortious conduct. They also initially sought writs of quo warranto and mandamus directing Tyson to disclose records relating to UPI and its investments, but Tyson produced materials that have satisfied the plaintiffs' request.

The defendants move to dismiss the plaintiffs' complaint for both procedural and substantive reasons. Procedurally, defendants argue that the Court lacks personal jurisdiction over UPI and that the Court should dismiss the case under the doctrine of forum non conveniens. The defendants further allege that plaintiffs failed to properly serve defendant UPI. Substantively, the defendants assert that the plaintiffs have not supported their tort and contract claims with specific factual allegations. The defendants also maintain that even if they breached a fiduciary duty owed to the plaintiffs, they did not breach a duty to the plaintiff DORD because the defendants never owed that plaintiff a duty.

The plaintiffs contend that their claims should not be dismissed on forum non

conveniens or other grounds because they have not had sufficient opportunity for discovery. Even if the claims against UPI were dismissed on forum non conveniens grounds, the plaintiffs claim that their action against Tyson should remain in this Court. The plaintiffs attest that this Court has personal jurisdiction over the defendants because the defendant UPI availed itself of Louisiana law by traveling to Louisiana to meet with the plaintiffs and by communicating with the plaintiffs through mail, telephone, and facsimile. The plaintiffs also explain that they intend to file a second amended and restated complaint that will moot the defendants' objections including its allegation of improper service. Substantively, the plaintiffs argue that Hong Kong is not an available forum because all parties, including their documents and witnesses, are from the United States except UPI. Finally, they insist that Hong Kong is not an adequate forum because it does not provide them with a meaningful cause of action.

## II. ANALYSIS

### A. Jurisdiction

The defendants argue that this Court cannot exercise personal jurisdiction over UPI because it has never done business in Louisiana or with anyone located in Louisiana, and the sole purpose of UPI is to further a Chinese joint venture.

To exercise personal jurisdiction over UPI, a non-Louisiana resident, the Court must satisfy the requirements of Louisiana's long-arm statute and the due process clause of the Fourteenth Amendment. *See Dickson Marine Inc. et al. v. Panalpina, Inc., et al.,* 179 F.3d 331, 336 (5th Cir. 1999). Because Louisiana's long-arm statute extends to the limits of due process, the Court need only consider whether subjecting UPI to personal jurisdiction would offend the Due Process Clause of the Fourteenth Amendment. *See id.*

■ The Due Process Clause requirements for exercising personal jurisdiction are satisfied if UPI has purposefully availed itself of the benefits and protections of Louisiana by establishing minimum contacts in Louisiana and if exercising personal jurisdiction does not offend "traditional notions of fair play and substantial justice." *Marathon Oil Co., et al. v. A.G. Ruhrgas,* 182 F.3d 291, 295 (1999) (quoting *Asahi Metal Idus. Co. v. Superior Court,* 480 U.S. 102, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987)). Minimum contacts are established if the Court has either specific or general personal jurisdiction. *See id.* Specific jurisdiction arises if UPI's contacts with Louisiana arise from or are directly related to the plaintiffs' causes of action. *See id.* General jurisdiction exists if UPI has continuous, systematic, and substantial contacts with Louisiana, even if unrelated to the events giving rise to the present litigation. *See id.*

■ The Court cannot exercise jurisdiction over UPI under a theory of specific jurisdiction because the events giving rise to the plaintiffs' causes of action did not occur in Louisiana. The plaintiffs allege that UPI has sufficient contacts with Louisiana to sustain specific jurisdiction because of travels to Louisiana by UPI shareholders and because of telephone, mail, and facsimile communications exchanged between plaintiffs and UPI during the formation of UPI. The plaintiffs do not suggest, however, that their causes of action arise directly from these exchanges. Pls.' Br. 9,10. Rather, the plaintiffs claim that Tyson and its predecessors ultimately acquired and used the power to operate the fish processing joint venture to the plaintiffs' detriment.

■ Travels to business meetings, conversations on the telephone, and correspondences by mail are not sufficient to establish minimum contacts unless there is evidence that the plaintiffs' claims directly arise from those specific activities. *See id.* In *Marathon Oil Co.,* the Fifth Circuit found that a foreign defendant could not have reasonably expected to be sued in a

Texas court because he attended a meeting in Texas concerning an international contract governed by Norwegian law. *See id.* In the present case, UPI could similarly not expect to defend an action in this Court because of its travels and communications to Louisiana regarding a Hong Kong business operating under the laws of Hong Kong. This Court, therefore, cannot exercise personal jurisdiction over UPI under a theory of specific jurisdiction.

■ The Court also cannot exercise jurisdiction over UPI according to a theory of general jurisdiction. For the Court to find the requirements of general jurisdiction satisfied, UPI must have continuous, systematic, and substantial corporate contacts with Louisiana that are unrelated to the plaintiffs' causes of action. *See Dickson Marine, Inc.,* 179 F.3d at 336. UPI, however, has no other connection with Louisiana than through the events giving rise to this litigation. It is a Hong Kong corporation established for the purpose of furthering a Chinese joint venture. The plaintiffs offer no evidence suggesting that UPI has business relations with Louisiana distinct from the purpose of furthering the plaintiffs' international investment interests.

■ Alteratively, the plaintiffs contend that Tyson's substantial contacts with Louisiana should be imputed to UPI to establish general jurisdiction. According to this argument, the business activities of the parent company, Tyson, are synonymous with the corporate contacts of its subsidiary, UPI. The plaintiffs support their contention by suggesting that Tyson and UPI satisfy the requirements set by the Fifth Circuit in *Hargrave v. Fibreboard, Corp.* for binding the exercise of personal jurisdiction over a parent corporation with its subsidiary. 710 F.2d 1154 (5th Cir.1983).

The plaintiffs' reliance upon *Hargrave* is misplaced. The Court in *Hargrave* examined the elements necessary to subject a parent company to personal jurisdiction because of the acts of its subsidiary. *See id.* at 1159. The Court never suggested imputing the contacts of a subsidiary to its parent company. Holding a subsidiary responsible for the corporate activities of its parent corporation would offend "traditional notions of fair play and substantial justice" because a subsidiary would be liable for activities for which they were not responsible in locations in which they lack meaningful contacts. *See International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The existence of a corporate relationship between Tyson and UPI is insufficient to permit the Court to impose jurisdiction over UPI. *See Dickson Marine, Inc.,* 179 F.3d at 340.

Even when applying the *Hargrave* factors, this Court does not find the relationship between Tyson and UPI sufficient to warrant the exercise of personal jurisdiction over UPI. In *Hargrave,* the Court identified the following factors for determining the relationship between a parent and a subsidiary company:

> (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations.

*Id.* at 338 (citing *Hargrave,* 710 F.2d at 1160). Tyson owns substantial stock in UPI, but the companies have different corporate headquarters. At most, UPI and another Tyson subsidiary share corporate offices in Seattle, Washington. No evidence suggests that Tyson and UPI share common directors, corporate formalities, and accounting systems. While plaintiffs may demonstrate that Tyson exercises complete authority over the general policy and perhaps daily operations of UPI, they do not represent that UPI exercises similar powers over Tyson. Like the corporations in *Dickson Marine, Inc,* Tyson and UPI are separate entities organized under

the laws of different countries. *See id.* at 339. Tyson and UPI may share a close corporate relationship, but it is not a relationship that connects UPI and Louisiana and warrants the exercise of personal jurisdiction over UPI.

## B. Forum Non Conveniens

■ The parties do not dispute that Tyson maintains sufficient contacts with Louisiana to permit the Court to exercise personal jurisdiction over it. Defendants, however, argue that this Court is not the proper forum for a suit against Tyson and its activities related to UPI. Pursuant to the doctrine of forum non conveniens, defendants argue that the present case should be dismissed because Louisiana is not the appropriate and most convenient forum to raise an action against Tyson and a Hong Kong corporation doing business in Hong Kong.

■ The doctrine of forum non conveniens permits a Court to resist exercising its authorized jurisdiction over a dispute to better serve the convenience of the parties and the ends of justice. *In re Air Crash Disaster Near New Orleans, LA,* 821 F.2d 1147, 1162 (5th Cir.1987) (citations omitted). If plaintiffs may raise their claims in an alternate forum that is available and adequate, then the Court must balance several private and public interest factors to determine whether dismissal under the doctrine of forum non conveniens is appropriate. *See Dickson Marine, Inc.,* 179 F.3d at 342.

■ This Court may only dismiss the present case under the doctrine of forum non conveniens if an alternate forum is available and adequate. *See id.* at 342. An alternate forum is available when the entire case and all the parties are within the jurisdiction of that forum. *In re Air Crash Disaster Near New Orleans, LA,* 821 F.2d at 1165. The defendants may submit to the jurisdiction of another forum by consenting to the foreign jurisdiction. *See Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254, n. 22, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981); *Empresa Lineas Maritimas Argentinas, S.A. v. Schichau–Unterweser, A.G., et al.,* 955 F.2d 368, 372 (5th Cir. 1992) (finding the Netherlands an available forum when both defendants consented to Dutch service).

The defendants offer Hong Kong as an alternate available forum in this case because UPI conducts business and can be served there, and Tyson voluntarily submits itself to Hong Kong jurisdiction for the purposes of this suit. The Court, therefore, finds Hong Kong an available alternate forum because the defendants consent to the service of process and to the jurisdiction of a Hong Kong court. *See Capri Trading v. Bank Bumiputra Malaysia Berhad,* 812 F.Supp. 1041, 1044 (N.D.Cal.1993) (holding Hong Kong an available and adequate forum because defendants conducted business, could be served, and agreed to jurisdiction in Hong Kong).

■ The Court must also determine whether Hong Kong is an adequate alternate forum. An alternate forum is adequate if its laws would not deprive the plaintiffs of all legal remedies or result in unfair treatment. *Empresa Lineas Maritimas Argentinas, S.A.,* 955 F.2d at 371. The plaintiffs contend that a Hong Kong court would treat their causes of action unfairly because the laws of Hong Kong do not permit an action for a breach of fiduciary duty by a minority shareholder against a majority shareholder. The federal courts, however, have previously determined that Hong Kong provides adequate causes of action for minority shareholders of Hong Kong corporations. *See Capri Trading,* 812 F.Supp. at 1044 (finding that Hong Kong law provides adequate claims and remedies to redress the alleged devaluing of minority shareholder stock); *cf. Empresa Lineas Maritimas Argentinas, S.A.,* 955 F.2d at 372 (holding differences in Dutch law would not unfairly treat plaintiff's tort claims if dismissed under forum

non conveniens). While the laws of Hong Kong and the laws of the United States may differ, legal differences neither necessarily constitute unfair treatment nor prove a substantial factor for the Court to consider in its forum non conveniens analysis. *Empresa Lineas Maritimas Argentinas, S.A,* 955 F.2d at 371. The defendants also explain that plaintiffs have a cause of action under the Hong Kong Companies Ordinance for the inequitable treatment of minority shareholders. *See* Dfs.' Reply Br. 12. The plaintiffs, therefore, may pursue relief for their alleged injuries under the laws of Hong Kong, and therefore have an adequate alternate forum available.

This Court, having found Hong Kong an available and adequate alternate forum, now considers the private interest factors involved in an analysis of forum non conveniens. These private interest factors include:

> [T]he relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witness; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of case easy, expeditious and inexpensive.

*Dickson Marine, Inc.,* 179 F.3d at 342 (quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947)). The Court must consider and defer to the initial choice of forum of American plaintiffs as an additional private interest factor. *See In re Air Crash Disaster Near New Orleans, LA,* 821 F.2d at 1165. The plaintiff's choice of forum is not, however, a private interest factor with dispositive weight. *See id.* at 1164 n. 26, 1165 (quoting *Reyno,* 454 U.S. at 257 n. 23, 102 S.Ct. 252). The Court should also consider the timeliness of defendants' motion to dismiss for forum non conveniens. *See id.* at 1165. Ultimately, the Court should balance the private interest factors of its forum non conveniens analysis in favor of

convenience. *See Dickson Marine, Inc.,* 179 F.3d at 342.

The balancing of private interest factors favors dismissal of the present case because Hong Kong is a more convenient forum and is the focal point of this litigation. In *Dickson Marine, Inc.,* the Fifth Circuit concluded that the private interest factors favored dismissal of Louisiana residents' claims against Gabonese and Swiss defendants hired to repair their vessel because Switzerland was the focal point of the litigation. 179 F.3d at 343. The plaintiff made allegations that required examining its transaction with defendants that occurred in Switzerland and Gabon. *Id.* Because the majority of witnesses, employees, documents, and evidence related to the transaction were located in Switzerland, the Court considered Switzerland the focal point of the litigation. *Id.*

Hong Kong is the focal point of this litigation because plaintiffs make allegations similar to those made in *Dickson Marine, Inc.* that necessitate examining witnesses, documents, and records related to the Chinese operations of UPI. Even if some witnesses and evidentiary materials are not easily accessible in Hong Kong, the plaintiffs do not suggest that the majority of witnesses and documents reside in Louisiana. Pls.' Br. 19. Although Louisiana plaintiffs initially selected a Louisiana forum in the present case, their choice of forum does not outweigh the unnecessary burdens of trying non-resident defendants in Louisiana for activities focused in Hong Kong. *See In re Air Crash Disaster Near New Orleans, LA,* 821 F.2d at 1165. Plaintiffs may also enforce a judgment against UPI in a Hong Kong court because it is a Hong Kong corporation subject to Hong Kong law. Finally, defendants have timely raised their motion to dismiss during the incipient stages of this litigation. The Court, therefore, finds that the private interest factors favor Hong Kong as a more convenient and appropriate forum for this litigation than the Eastern District of Louisiana.

The Court need not consider the public interest factors relevant to a forum non conveniens analysis because it finds that an adequate alternate forum is available and the balance of private interest factors favor dismissal. *See Empresa Lineas Maritimas Argentinas, S.A,* 955 F.2d at 376. Nevertheless, the public interest factors relevant to the present case suggest that litigation in the Eastern District of Louisiana would prove unduly burdensome on the community and further no community interest. The public interest factors include:

> [T]he administrative difficulties flowing from court congestion; the "local interest in having localized controversies decided at home"; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws; or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Dickson Marine, Inc.,* 179 F.3d at 343 (citations omitted). Louisiana has no interest in the litigation other than that plaintiffs are a Louisiana resident and a Louisiana corporation. While the residency of the plaintiffs has some significance, it is not dispositive in a forum non conveniens analysis. *See id.* (dismissing case for forum non conveniens despite the Louisiana residency of the plaintiffs). The present case also presents to the Court difficult questions of conflicts of laws and requires the application of Hong Kong laws because the locus of the dispute involves a business venture in Asia and not a local controversy that should be decided in Louisiana. Louisiana has no significant public interest in resolving control of a Hong Kong company even if one of its minority shareholders is a Louisiana resident.

The Court concludes that an alternate forum is available and adequate and that the balance of private and public interest factors demonstrates that the present case should be dismissed for forum non conve-

niens. The Court, however, reserves the right of the plaintiffs to return to this forum if the defendants prevent them from reinstating their claims in Hong Kong or if the plaintiffs suffer undue inconvenience or prejudice in doing so. *See Baris v. Sulpicio Lines, Inc.,* 932 F.2d 1540, 1551 (5th Cir.1991). To ensure that the plaintiffs can reasonably pursue their claims in the Hong Kong forum, the Court requires the defendants to agree to litigate, submit to service of process, engage in discovery, and consent to the enforceability of a judgment, all within the jurisdiction of Hong Kong.

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that the motion to dismiss of defendants Tyson Foods, Inc. and Universal Plan Investments Limited pursuant to Rule 12 of the Federal Rules of Civil Procedure is GRANTED on the grounds of lack of personal jurisdiction and forum non conveniens. IT IS FURTHER ORDERED that defendants stipulate to litigating, to waiving any statute of limitation which may be applicable, to receiving service of process, to participating in discovery, and to adhering to the enforceability of a judgment, all within the jurisdiction of Hong Kong.