**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**No. 99-31379**

**CHARLES TURAN; DEEP OCEAN RESOURCE DEVELOPERS, INC.,**

**Plaintiffs-Appellants,**

**versus**

**UNIVERSAL PLAN INVESTMENTS LIMITED; TYSON FOODS, INC.,**

**Defendants-Appellees.**

**Appeal from the United States District Court**
**for the Eastern District of Louisiana**
**(99-CV-1096)**

**January 24, 2001**

Before BARKSDALE and BENAVIDES, Circuit Judges, and VELA, District Judge.[1]

PER CURIAM:[2]

In this Louisiana diversity action, Louisiana resident Charles Turan and his Louisiana corporation, Deep Ocean Resource Developers (Deep Ocean), appeal the dismissal of Universal Plan Investments Limited (Universal Investments) for lack of in personam jurisdiction and Universal Investments' parent, Tyson Foods, Inc. (Tyson), for forum non conveniens. Among other things, Appellants

[1]District Judge of the Southern District of Texas, sitting by designation.

[2]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

contend: the district court should have imputed to Universal Investments (Tyson's subsidiary) Tyson's jurisdictional contacts with the forum state, Louisiana; and, concerning Tyson, the district court failed to properly balance private and public interest factors, including *not* affording appropriate deference to Appellants' choice of forum. We **AFFIRM**, but **REMAND** for modification of the judgment.

I.

In October 1990, Turan, a Louisiana resident, and Deep Ocean, his Louisiana corporation, entered into an agreement with Shanghai Fish Processing Factory (Shanghai Fish) of Shanghai, People's Republic of China, to create a joint venture for the processing and marketing of fish products. In furtherance of the joint venture, Appellants created Universal Investments and *incorporated it in Hong Kong*. In March 1991, Universal Investments and Shanghai Fish agreed to establish a joint venture corporation, Ocean Wealth Fish Products Corporation (Ocean Wealth).

Arctic Alaska Fisheries Corporation (Arctic Alaska), a deep-sea fishery located in Seattle, Washington, was attracted by the marketing of Ocean Wealth's fish-processing services. By November 1991, Arctic Alaska had acquired 80 percent ownership of the newly formed Universal Investments, with Turan retaining the remaining 20 percent. In 1992, Tyson acquired all the shares of Arctic Alaska, including its interest in Universal Investments.

2

According to Appellants: Tyson assumed control over Universal Investments *and the Ocean Wealth joint venture*, and operated *them* solely for its benefit; and in April 1997, Tyson caused Universal Investments to issue, without notice to Appellants, approximately 24,000 shares of voting stock and approximately 6,000 shares of non-voting stock to Tyson's subsidiaries, reducing Turan's former 20 percent interest in Universal Investments to less than one percent.

Appellants claim a breach of fiduciary duties from mismanagement and waste and/or breach of contract and quasi-contractual obligations, and continuing tortious conduct. They claim this caused them damages in the form of lost profits from the Ocean Wealth joint venture, lost value in their Universal Investments investment, and lost opportunity for profits from other projects. These damages are allegedly the result of Appellees' setting the price of Ocean Wealth's fish processing so low that Universal Investments did *not* receive a profit.

Based on numerous grounds, pursuant to Rule 12 of the Federal Rules of Civil Procedure, Appellees moved to dismiss. Pursuant to a comprehensive and well-reasoned opinion, the motion was granted as to Universal Investments for lack of personal jurisdiction; as to Tyson, for forum non conveniens. ***Turan v. Universal Plan Inv. Ltd.***, 70 F. Supp. 2d 671 (E.D. La. 1999).

3

II.

These bases for the dismissals are contested here.  Therefore, at issue is:  whether the district court erred by dismissing Universal Investments for lack of personal jurisdiction; and whether it *clearly* abused its discretion by dismissing Tyson for forum non conveniens.

A.

Absent any dispute as to relevant facts, the district court's jurisdictional ruling is reviewed *de novo*.  ***Marathon Oil Co. v. A.G. Ruhrgas***, 182 F.3d 291, 294 (5th Cir. 1999).  When alleged jurisdictional facts are disputed, we resolve all conflicts in favor of the party seeking to invoke the court's jurisdiction.  ***Ruston Gas Turbines, Inc. v. Donaldson Co.***, 9 F.3d 415, 418 (5th Cir. 1993).

Two requirements must be met before a district court can exercise personal jurisdiction over a nonresident defendant:  that defendant must be amenable to service of process under the forum state's long-arm statute; and the assertion of personal jurisdiction must be consistent with the Due Process Clause of the Fourteenth Amendment.  *E.g.,* ***Dickson Marine Inc. v. Panalpina, Inc.***, 179 F.3d 331, 336 (5th Cir. 1999).  Because Louisiana's long-arm statute extends to the limits of due process, we need only decide whether subjecting Universal Investments to suit in Louisiana would offend due process.  ***Id.***

4

It will *not* be offended if the nonresident has "certain minimum contacts with [the forum state] such that the maintenance of the suit does *not* offend 'traditional notions of fair play and substantial justice'". ***International Shoe Co. v. Washington***, 326 U.S. 310, 316 (1945) (emphasis added) (quoting ***Milliken v. Meyer***, 311 U.S. 457, 463 (1940)). The nonresident's contacts with the forum state should be such that it "reasonably should anticipate being haled into court there". ***Marathon Oil Co.***, 182 F.3d at 295 (quoting ***World-Wide Volkswagen Corp. v. Woodson***, 444 U.S. 286 (1980)). The "minimum contacts" requirement is satisfied if the contacts give rise to either "specific" or "general" personal jurisdiction. ***Id***. Neither basis is present in this case.

1.

"Specific" jurisdiction exists when a nonresident corporation "has purposefully directed its activities at the forum state and the litigation results from alleged injuries that *arise out of or relate to those activities*". ***Kelly v. Syria Shell Petroleum Dev. B.V.***, 213 F.3d 841, 854 (5th Cir.) (citation omitted; emphasis in original), *cert. denied*, 121 S. Ct. 426 (2000). Appellants maintain specific jurisdiction exists for Universal Investments because of its business meetings in Louisiana and its telephone, mail, and facsimile communications with Appellants *during and after its formation*.

Business meetings in the forum state and related communications, however, are *not* sufficient to establish the requisite "minimum contacts" *unless* Appellants' claims arose from those activities. *See* **Marathon Oil Co.**, 182 F.3d at 295. Appellants' claims did *not* so arise; instead, they arose out of the alleged wrongful acts committed by Appellees in Universal Investments' office in Seattle, Washington. Universal Investments' contacts with Louisiana rested on nothing more than the mere fortuity that Appellants happened to be residents there. *See* **Patterson v. Dietze, Inc.**, 764 F.2d 1145, 1147 (5th Cir. 1985). Further, Universal Investments could *not* reasonably anticipate being sued in Louisiana as a result of attending business meetings there, as well as sending various communications to Appellants, because those contacts concerned its business in Hong Kong. *See* **Marathon Oil Co.**, 182 F.3d at 295. Universal Investments has never done business in Louisiana.

2.

"General" jurisdiction exists if a nonresident's contacts with the forum state are "continuous, systematic, and substantial". **Id.**

a.

Appellants offer *no* evidence that Universal Investments had any contact with Louisiana *other than* those discussed above. Needless to say, they do *not* constitute the requisite "continuous" and "systematic" contacts. *See* **id.**

6

b.

Apparently, because of the lack of such contacts, Appellants maintain that, for general jurisdiction, Tyson's substantial contacts with Louisiana should be imputed to Universal Investments, its subsidiary. They rely primarily upon *Hargrave v. Fibreboard Corp.*, 710 F.2d 1154 (5th Cir. 1983).

*Hargrave* delineated the factors that must be considered in determining whether a *parent* can be held amenable to personal jurisdiction because of the acts of its *subsidiary*. *Dickson Marine*, 179 F.3d at 338. Generally, what is required is evidence that the parent asserts such control over its subsidiary that the subsidiary is, in reality, the parent's agent or alter ego. *Id.* The *Hargrave* factors include:

> (1) amount of stock owned by the parent of the subsidiary; (2) did the two corporations have separate headquarters; (3) did they have common officers and directors; (4) did they observe corporate formalities; (5) did they maintain separate accounting systems; (6) did the parent exercise complete authority over general policy; (7) did the subsidiary exercise complete authority over daily operations.

*Dickson Marine*, 179 F.3d at 339 (citing *Hargrave*, 710 F.2d at 1160). Although *Hargrave* analyzed the elements necessary to subject a *parent* to personal jurisdiction because of the activities of its *subsidiary,* "the same legal principles apply" when jurisdiction is sought over the *subsidiary* because of the

7

activities of its *parent*. ***Walker v. Newgent***, 583 F.2d 163, 167 (5th Cir. 1978) (based on agency relationship between parent and its subsidiary, parent's contacts with forum state may be imputed to subsidiary), *cert. denied*, 441 U.S. 906 (1979).

Courts presume the *institutional independence* of related corporations when determining if one's contacts with a forum state can be the basis for a related corporation's contacts. ***Dickson Marine***, 179 F.3d at 338. This presumption may only be overcome by *clear* evidence, with the "burden ... on the proponent of the agency/alter ego theory". ***Id.***

Appellants have *not* shown, by the requisite *clear* evidence, such a relationship between Tyson and Universal Investments. Tyson owns a substantial amount of Universal Investments' stock, and, thus, exercises authority over its general policy and daily operations. However, the corporations have different corporate headquarters. Further, Appellants *have not shown*: that Tyson and Universal Investments share common officers or directors; that they have failed to observe corporate formalities; or that they do *not* maintain separate accounting systems.

B.

Pursuant to the doctrine of forum non conveniens, a federal district court can decline to exercise jurisdiction "where it appears that the convenience of the parties and the court and the interests of justice indicate that the action should be tried in

another forum". ***In re Air Crash Disaster Near New Orleans, La.,*** 821 F.2d 1147, 1153-54 (5th Cir. 1987) (en banc) (citations omitted), *vacated on other grounds sub nom.* ***Pan Am. World Airways, Inc. v. Lopez***, 490 U.S. 1032 (1989). *No* single private or public interest factor is given conclusive weight; instead, and *not* surprisingly, the central focus of the inquiry is convenience. ***Dickson Marine***, 179 F.3d at 342.

A dismissal for forum non conveniens may *not* be reversed unless there has been a *clear* abuse of discretion. ***Piper Aircraft Co. v. Reyno***, 454 U.S. 235, 257 (1981). We review the district court's decision-making process and conclusion and determine if it is reasonable. ***In re Air Crash Disaster***, 821 F.2d at 1167. Restated, we *cannot* perform a *de novo* analysis and make the initial determination for the district court. ***Id.***

1.

Before applying the doctrine, the district court must first determine whether an *available* and *adequate* foreign forum exists. ***Id.*** at 1165. For Hong Kong, the district court found: Hong Kong is *available*, because Appellees consented to the service of process and to the jurisdiction of a Hong Kong court; and, Hong Kong is *adequate*, because Appellants can pursue relief for their claimed injuries under Hong Kong law. ***Turan***, 70 F. Supp. 2d at 676-77. *Appellants do not contest these findings*.

9

If, as in this case, the district court makes a positive available-and-adequate-foreign-forum finding, it should then consider the following private interest factors, *weighing in the balance the relevant deference given the plaintiff's initial choice of forum*:

> the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the costs of obtaining attendance of willing, witnesses; probability of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. There may also be questions as to the enforc[ea]bility of a judgment if one is obtained.

*In re Air Crash Disaster*, 821 F.2d at 1162. When analyzing the private interest factors, the court must also consider whether the motion to dismiss was timely filed. *Id.* at 1165.

Citing *Dickson Marine*, the district court concluded that the balancing of private interest factors favored dismissal because Hong Kong was a more convenient forum than Louisiana and was the *focal point of the litigation*. *Turan*, 70 F. Supp. 2d at 677. It found: Hong Kong is the focal point, because Appellants' allegations, like those in *Dickson Marine*, necessitate examining witnesses, documents, and records relating to Universal Investments' Chinese operations; Appellants' choice of forum does *not* outweigh the unnecessary burdens of trying Appellees in

Louisiana for activities focused in Hong Kong; Appellants can enforce a judgment against Universal Investments in Hong Kong; and, Appellees timely moved to dismiss. *Id.*

Appellants maintain that Tyson did *not* meet its burden of production. Overly detailed affidavits are *not* required; what is required is "enough information to enable the District Court to balance the parties' interests". *Reyno*, 454 U.S. at 258; *In re Air Crash Disaster*, 821 F.2d at 1164-65. Obviously, the detail required depends on the facts of each case. *In re Air Crash Disaster*, 821 F.2d at 1165 n.28.

Appellants note that Appellees did *not* submit affidavits; but, they did cite to Appellants'. Along this line, Appellants assert that Tyson has *not* identified specific witnesses in Hong Kong. However, the Supreme Court has excused such detail in cases where crucial witnesses are difficult to identify or interview. *See Reyno*, 454 U.S. at 258; *In re Air Crash Disaster*, 821 F.2d at 1164-65 & n.28. Based upon the record (specifically, Appellants' complaint and affidavits), the district court had enough information to decide the forum non conveniens issue.

Appellants' contention that the district court did *not* properly weigh the requisite private interest factors is without merit. Hong Kong is the *focal point* of this litigation, because it involves the internal governance of a Hong Kong corporation, Universal Investments. *See Dickson Marine*, 179 F.3d at 343; *see*

11

*also* **Koster v. (American) Lumbermens Mut. Cas. Co.**, 330 U.S. 518, 527 (1947) (although *no* rule requires dismissal upon mere showing that trial will involve issues relating to internal affairs of foreign corporation, it is factor which may "show convenience of parties or witnesses, the appropriateness of trial in a forum familiar with the law of the corporation's domicile, and the enforceability of the remedy if one be granted").

Moreover, Appellants seek damages in the form of lost profits from the Ocean Wealth joint venture and lost opportunity for profits from other joint projects with the Chinese government. This requires examining witnesses and evidentiary materials related to Universal Investments' *Chinese operations*. For example, and as noted, Appellants allege that Appellees, among other things, surreptitiously diluted Appellants' interest in Universal Investments and *manipulated the price for fish processing charged by the Ocean Wealth joint venture*. The propriety of Chinese fish processing prices must necessarily be proved, at least in part, by Chinese witnesses.

Appellants protest that many key witnesses and documents are located either in Louisiana or elsewhere in the United States. However, this essentially concerns the quantum of Appellees' proof rather than its substance, "a basis on which we are highly reluctant to find an abuse of discretion". **Robinson v. TCI/US West Communications Inc.**, 117 F.3d 900, 909 (5th Cir. 1997). Further,

12

nothing in the record suggests this case should be tried in Louisiana (as opposed to the State of Washington, where the alleged wrongdoing occurred). *Id.* at 908-09.

Appellants also contend that the district court failed to give sufficient deference to their choice of forum. That choice is entitled to greater deference when, as here, the plaintiff has sued in his home forum. *Reyno*, 454 U.S. at 249. Thus, "[i]n any balancing of conveniences, a real showing of convenience by a plaintiff who has sued in his home forum will normally outweigh the inconvenience the defendant may have shown". *Id.* at 256 n.23 (quoting *Koster*, 330 U.S. at 524). However, "[a] citizen's forum choice should *not* be given dispositive weight". *Id.* (emphasis added). Although a resident plaintiff deserves more deference than a foreign plaintiff, "dismissal should *not* be automatically barred when a plaintiff has filed suit in his home forum". *Id.* (emphasis added). Instead, "if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper". *Id.*

The district court gave Appellants' forum-choice the deference *Reyno* demands: "Although Louisiana plaintiffs initially selected a Louisiana forum ..., their choice of forum does *not* outweigh the unnecessary burdens of trying non-resident defendants in Louisiana for activities focused in Hong Kong". *Turan*, 70 F. Supp. 2d at 677 (emphasis added). Further, Appellants made *no* "real showing of

13

convenience". The district court found that, even if some of the witnesses and evidentiary materials were *not* easily accessible in Hong Kong, Appellants did *not* assert that the majority of witnesses and documents were in Louisiana. *Id.* Also, because Louisiana does *not* have personal jurisdiction over the other named defendant, Universal Investments (pursuant to our earlier holding), it clearly is *not* a convenient forum. *See* **Calavo Growers of Calif. v. Generali Belgium**, 632 F.2d 963, 966 (2d Cir. 1980), *cert. denied*, 449 U.S. 1084 (1981).

Finally, Appellants assert that the district court failed to find Hong Kong law offered either a mechanism for compelling non-Chinese residents to testify, or that there is a procedural device for perpetuating such testimony for trial-use. However, the district court was only required to analyze *relevant* private interest factors. **In re Air Crash Disaster**, 821 F.2d at 1164. Because the non-Chinese witnesses identified by Appellants are affiliated either with them or with Appellees, and the court ordered Appellees to stipulate to litigating, receiving service of process, and participating in discovery, all within the jurisdiction of Hong Kong, it was *not* required to make such a finding. *See* **Turan**, 70 F. Supp. 2d at 678.

### 3.

If, as here, the private interest factors weigh in favor of dismissal, *no* further inquiry is required. **In re Air Crash**

14

*Disaster*, 821 F.2d at 1165. On the other hand, *if* the district court concludes that the private interest factors do *not* weigh in favor of dismissal, it must consider the following public interest factors:

> the administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the interest in having the trial of a diversity case in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Id.* at 1162-63.

Although, as discussed, the district court found the balance of private interest factors favored dismissal, it did consider the public interest factors. *Turan*, 70 F. Supp. 2d at 678. It concluded they, too, favored dismissal because "litigation in the Eastern District of Louisiana would prove unduly burdensome on the community and further *no* community interest". *Id*. (emphasis added).

This conclusion was *not* unreasonable. Hong Kong law applies to at least some of Appellants' claims. *See Duckworth Woods Tire Serv., Inc. v. Johnson*, 557 So. 2d 311, 313 (La. Ct. App. 1990) ("We agree that it was *not* proper for the trial court to apply Louisiana corporate law to the internal activities of an out-of-state corporation which itself had no connection with Louisiana."

15

(emphasis added)).  The need to apply foreign law favors dismissal.  *Reyno*, 454 U.S. at 260.  Further, Louisiana does *not* have an interest in the litigation other than Appellants' Louisiana residency.  *See* *Dickson Marine*, 179 F.3d at 343 (dismissing case for forum non conveniens despite plaintiffs' Louisiana residency).

In sum, the district court did *not clearly* abuse its discretion by dismissing Tyson on the basis of forum non conveniens.  *See* *In re Air Crash Disaster*, 821 F.2d at 1165-66 ("[E]ven when the private conveniences of the litigants are nearly in balance, a trial court has discretion to grant forum non conveniens dismissal upon finding that retention of jurisdiction would be unduly burdensome to the community, that there is little or no public interest in the dispute or that foreign law will predominate if jurisdiction is retained." (quoting *Pain v. United Techs. Corp.*, 637 F.2d 775, 792 (D.C. Cir. 1980), *cert. denied*, 454 U.S. 1128 (1981))).

4.

If the district court concludes the action should be dismissed in favor of trial in a foreign forum, it must ensure:  the plaintiff can reinstate his action in the alternative forum without undue inconvenience or prejudice; and, if the defendant obstructs such reinstatement, the plaintiff can return to the American forum.  *Id.* at 1166.  The district court did so:  "The Court ... reserves the right of the plaintiffs to return to this forum if the

16

defendants prevent them from reinstating their claims in Hong Kong or if the plaintiffs suffer undue inconvenience or prejudice in doing so." *Turan*, 70 F. Supp. 2d at 678. In addition, the district court conditioned the dismissal on Appellees' consent to "litigate, submit to service of process, engage in discovery, and consent to the enforceability of a judgment, all within the jurisdiction of Hong Kong". *Id.*

The judgment, however, does *not* include these conditions and contingencies. In the alternative, Appellants request its modification of the judgment to incorporate them. We agree that it should be so modified.

### III.

For the foregoing reasons, the dismissals of the two defendants are **AFFIRMED**, with this matter to be **REMANDED** to the district court for modification of the judgment.

*AFFIRMED as to dismissals;*
*REMANDED for modification of judgment*