IN THE UNITED STATES DISTRICT COURT 
 FOR THE EASTERN DISTRICT OF TEXAS 
 MARSHALL DIVISION 

PLS IV, LLC, § 
 § 
 Plaintiff, § 
 § 
v. § CIVIL ACTION NO. 2:25-CV-00067-JRG 
 § (LEAD CASE) 
B&B THEATRES OPERATING § 
COMPANY, INC., § FILED UNDER SEAL 
 § 
 Defendant. § 
 § 

PLS IV, LLC, § 
 § 
 Plaintiff, § 
 § 
v. § CIVIL ACTION NO. 2:25-CV-00068-JRG 
 § (MEMBER CASE) 
THE MARCUS CORPORATION and § 
MARCUS THEATRES, LLC, § FILED UNDER SEAL 
 § 
 Defendants. § 
 § 

 MEMORANDUM OPINION AND ORDER 
 Before the Court is the Motion to Dismiss (the “Motion”) filed by Defendant The Marcus 
Corporation (“Marcus Corp.”). (Dkt. No. 23.) After reviewing the Motion and related briefing, the 
Court finds that the Motion should be and hereby is DENIED. 
 I. BACKGROUND 
 Plaintiff PLS IV, LLC (“Plaintiff”) filed its complaint against Defendants Marcus Theatres, 
LLC (“Marcus Theatres”) and Marcus Corp. on January 23, 2025. (Case No. 2:25-cv-00068, Dkt. 
No. 1.) That case was consolidated into the above-captioned case on April 7, 2025. (Dkt. No. 16.) 
Marcus Corp. filed the Motion on April 14, 2025. (Dkt. No. 23.) Plaintiff and Marcus Corp. jointly 
moved for venue discovery on April 24, 2025, which this Court granted on April 26, 2025. (Dkt. 
Nos. 31, 33.) Additionally, Plaintiff voluntarily dismissed without prejudice its causes of action 
against all defendants for infringement of U.S. Patent Nos. 6,785,815 and 7,694,342 on October 
31, 2025, which this Court accepted on November 4, 2025. (Dkt. Nos. 59, 60.) Plaintiff’s 

allegations against Marcus Corp. of infringement of U.S. Patent Nos. 7,340,602 and 7,406,603 
remain live. (See Case No. 2:25-cv-00068, Dkt. No. 1 at 2.) 
 In the Motion, Marcus Corp. moves to dismiss Plaintiff’s complaint against it for improper 
venue. (Dkt. No. 23 at 1.) In its response brief, Plaintiff “does not contest Marcus Corp.’s assertion 
that it does not reside or commit infringing acts in this District.” (Dkt. No. 55 at 1.) Typically this 
statement by a plaintiff would end the venue inquiry, but in this briefing Plaintiff responds that 
venue should be imputed from Marcus Theatres (for whom neither party disputes that venue is 
proper in this District) to Marcus Corp. via an alter ego theory. (Id. at 10-11.) 
 II. LEGAL STANDARD 
 Venue may be imputed from a subsidiary to a parent corporation under an alter ego theory. 

Celgene Corp. v. Mylan Pharms. Inc., 17 F”.4th 1111, 1125 (Fed. Cir. 2021). The alter-ego inquiry 
is not unique to patent law, such that Fifth Circuit—rather than Federal Circuit—law applies. See, 
e.g., Insituform Techs., Inc. v. CAT Contracting, Inc., 385 F.3d 1360, 1380 (Fed. Cir. 2004) 
(“Because the joinder issue is not unique to patent law, we apply the law of the regional circuit”). 
“Although courts often discuss alter ego in terms of jurisdictional issues, the same concerns are 
present when analyzing venue.” Sightline Payments, LLC v. Everi Holdings Inc., Case No. 6:21- 
CV-01015-ADA, 2022 WL 2078215, *4 (W.D. Tex June 1, 2022) (citing Minnesota Min. & Mfg. 
Co. v. Eco Chem, Inc., 757 F.2d 1256, 1265 (Fed. Cir. 1985)); see also Nat'l Steel Car Ltd. v. 
Greenbrier Companies Inc., No. 6:19-cv-00721-ADA, 2020 WL 4289388, at *2 (W.D. Tex. July 
27, 2020). 
 To impute venue from one entity to another, courts must test whether “the lines between the 
[entities] become ‘so blurred that the two become one.’” Wapp Tech. Ltd. P’ship v. Micro Focus 

Int’l, PLC, 406 F.Supp.3d 585, 595 (E.D. Tex. 2019) (quoting QR Spex, Inc. v. Motorola, Inc., 507 
F.Supp.2d 650, 663 (E.D. Tex. 2007)). The alter ego inquiry requires a court to “look to the totality 
of the circumstances,” and is “heavily fact-specific.” U.S. v. Jon-T Chemicals, Inc., 768 F.2d 686, 
694 (5th Cir. 1985). The standard for a finding of an alter ego relationship is “relaxed” in cases 
where it is alleged to establish jurisdiction or venue, rather than to impose liability. Sightline 
Payments, 2022 WL 2078215 at *4. 
 The parties disagree about which test should govern in this case. Plaintiff asserts that this Court 
should consider the Bridas factors: 
 (1) the parent and subsidiary have common stock ownership; (2) the parent and subsidiary 
 have common directors or officers; (3) the parent and subsidiary have common business 
 departments; (4) the parent and subsidiary file consolidated financial statements; (5) the 
 parent finances the subsidiary; (6) the parent caused the incorporation of the subsidiary; 
 (7) the subsidiary operated with grossly inadequate capital; (8) the parent pays salaries and 
 other expenses of subsidiary; (9) the subsidiary receives no business except that given by 
 the parent; (10) the parent uses the subsidiary’s property as its own; (11) the daily 
 operations of the two corporations are not kept separate; (12) the subsidiary does not 
 observe corporate formalities. Bridas S.A.P.I.C v. Gov’t of Turkmenistan, 447 F.3d 411, 418 
 (5th Cir. 2006). 

Marcus Corp. identifies factors from Conti 11. And it states the Court should consider those 
instead:1 
 (1) the amount of stock owned by the parent of the subsidiary; (2) whether the entities have 
 separate headquarters, directors, and officers; (3) whether corporate formalities are 
 observed; (4) whether the entities maintain separate accounting systems; and (5) whether 
 the parent exercises complete control over the subsidiary’s general policies or daily 

1 The Court notes that although Marcus Corp. cites Conti 11., these factors are typically referred to as the Hargrave 
factors after Hargrave v. Fibreboard Corp., 710 F.2d 1154 (5th Cir. 1983). The Court hereafter refers to this case as 
Hargrave. 
 activities. Conti 11. Container Schiffarts-GMBH & Co. KG M.S., MSC Flaminia v. MSC 
 Mediterranean Shipping Co., S.A., 91 F.4th 789, 801 (5th Cir. 2024) (quoting Dieuce-Lisa 
 Indus., Inc. v. Disney Enters., Inc., 942 F.3d 239, 251 (5th Cir. 2019). 

Since the Hargrave line of cases involve imputing personal jurisdiction (which is closer to the 
venue inquiry, per Sightline) and given Bridas involves the imposition of liability, the Court finds 
that the Hargrave factors are appropriate to guide the alter ego inquiry in this case. The Court 
applies the factors as stated in Hargrave, and notes that these are the same factors the parties 
addressed in their briefing to the Court. 
 Under Hargrave, “so long as a parent and subsidiary maintain separate and distinct corporate 
entities, the presence of one in a forum state may not be attributed to the other.” 710 F.2d at 1160. 
In the Fifth Circuit, courts “demand poof of control by the parent over the internal business 
operations and affairs of the subsidiary in order to fuse the two for [venue] purposes… [t]he degree 
of control exercised by the parent must be greater than that normally associated with common 
ownership and directorship.” Id. (collecting cases). While there is a presumption of independence 
between parents and subsidiaries, this presumption “may be rebutted by ‘clear evidence,’ which 
requires a showing of ‘something beyond’ the mere existence of a corporate relationship between 
a resident and nonresident entity to warrant the exercise of [venue] over the nonresident.” 
Freudensprung v. Offshore Tech. Services, Inc., 379 F.3d 327, 346 (5th Cir. 2004) (quoting Dickson 
Marine, Inc. v. Panalpina, Inc., 179 F.3d 331, 338 (5th Cir. 1999)). 
 III. ANALYSIS 
 A. The Amount of Marcus Theatres Stock Owned by Marcus Corp. 
 The first Hargrave factor looks at the amount of stock owned by the parent of the 
subsidiary. Marcus Corp. is the sole owner of Marcus Theatres’ stock. (Dkt. Nos. 55, 56.) As such, 
this factor weighs in favor of a finding that Marcus Theatres is Marcus Corp.’s alter ego. 
 B. Whether Marcus Corp. and Marcus Theatres Have Separate Headquarters, 
 Directors, and Officers 
 The second Hargrave factor looks to overlap between directors and officers and whether 
the entities have the same or separate headquarters. 

 Marcus Corp. and Marcus Theatres have many directors and officers in common. Thomas 
F. Kissinger is both a director and officer for Marcus Theatres, and is the Senior Executive Vice 
President, General Counsel, and Secretary for Marcus Corp.; Chad M. Paris is both a director and 
the Treasurer for Marcus Theatres, and is the CFO and Treasurer for Marcus Corp.; Steven S. 
Bartlet is the Secretary for Marcus Theatres and the Assistant Secretary for Marcus. Corp. (Dkt. 
No. 55 at 12, citing Dkt. Nos. 55-4, 55-7, and 55-8.) Mr. Kissinger, Mr. Paris, and Mr. Bartlet 
additionally serve as managers or directors of at least two of Marcus Theatres’ subsidiaries, MMT 
Texny, LLC and Marcus Midwest, which hold theatres that Marcus Theatres operate across the 
country, including the theatre located in this district. (Dkt. No. 55 at 12, citing Dkt. Nos. 55-10 and 
Dkt. No. 55-16.) 

 Marcus Corp. and Marcus Theatres also share a common headquarters. (Dkt. No. 55 at 13, 
citing Dkt. No. 23-1 at 1.) Per Marcus Corp.’s interrogatory responses, Marcus Corp. also 
“provides… certain shared service accounting and payroll functions… [and] shared legal services 
and shared human resources benefits administration” to Marcus Theatres. (Dkt. No. 55-11 at 17.) 
Marcus Corp. states that “[t]he cost of these central functions are allocated and charged to Marcus 
Theatres” (Dkt. No. 55-11 at 17), but Marcus Corp. did not produce documentation showing that 
it informs Marcus Theatres of these costs (Dkt. No. 55 at 13), and Marcus Corp.’s vice president 
of legal affairs and director of labor employment Joshua Welsh stated in his deposition that he does 
not know how the costs are communicated or allocated from Marcus Theatres to Marcus Corp. 
(Dkt. No. 55-3 at 39-40). 
 This factor also weighs in favor of a finding that Marcus Theatres is Marcus Corp.’s alter 
ego because of both the overlap in directors and officers and the shared headquarters and business 

departments. 
 C. Whether Corporate Formalities are Observed 
 Plaintiff identifies many corporate formalities that it asserts Marcus Corp. does not strictly 
follow. First, Plaintiff argues that Marcus Corp.’s failure to turn over bank account information 
establishing that Marcus Corp. and Marcus Theatres have separate accounts is telling. The failure 
to produce such because it “‘is very complicated’” and because “‘cash balances are only 
determined and reported on a consolidated basis,’” “strongly undermines Marcus Corp.’s claim 
that Marcus Theatres maintains corporate formalities by keeping separate bank accounts.” (Dkt. 
No. 55 at 17, quoting Dkt. No. 55-3 at 93-95.) 
 Second, Plaintiff asserts that Marcus Corp. does not maintain separate financial records for 

all its financial information, as demonstrated by the fact that Marcus Theatres only provides 
Marcus Corp. with an operating statement monthly. (Dkt. No. 55 at 17.) Accordingly, Marcus 
Corp.’s accounting department must collect and generate much of Marcus Theatres’ financial data 
(such as types of information commonly found on a balance sheet, and cash flow statements) to 
incorporate it into the consolidated financial statement that Marcus Corp. produces which covers 
Marcus Corp. and all its subsidiaries. (Dkt. No. 55 at 17-18.) 
 Third, Plaintiff discusses certain bylaws that Marcus Theatres fails to adhere to. (Id. at 18.) 
Plaintiff identifies that Marcus Theatres’ bylaws require the maintenance of corporate minutes at 
meetings, yet the only one of Marcus Theatres’ minutes that was produced from Mr. Kissinger’s 
files did not cover a meeting. (Id.) Supported by these missing minutes, Plaintiff also identifies 
that there are no minutes or other documentary evidence to show that Marcus Theatres held its 
required shareholders’ and Board of Directors’ meetings in 2023 and 2024. (Id.) Finally, Plaintiff 
notes that Marcus Corp. also failed to produce any of Marcus Theatres’ minutes regarding the 

decision to convert Marcus Theatres from a corporation to an LLC in December of 2024. (Id. at 
19.) 
 Marcus Corp.’s only response to these points in its reply brief is that it “files annual and 
quarterly reports with the SEC… and Marcus Theatres files its annual reports with the State of 
Wisconsin… thus maintaining corporate formalities,” (Dkt. No. 56 at 5, citing Dkt. Nos. 55-4, 55-
12, and 55-13), a point which Plaintiff does not dispute (Dkt. No. 55 at 18). Despite this one 
corporate formality, Marcus Corp. provides little to no discussion of the other corporate formalities 
Plaintiff raises and does not address the areas where Plaintiff asserts that no evidence was 
produced. As such and on these facts, the Court agrees with Plaintiff that this factor supports a 
finding of alter ego as well. 

 D. Whether Marcus Corp. and Marcus Theatres Maintain Separate Accounting 
 Systems 
 The fourth Hargrave factor concerns whether Marcus Corp. and Marcus Theaters maintain 
separate accounting systems. On this factor, Marcus Corp. stated in its reply brief that Plaintiff 
“cannot argue that Marcus Corp. and Marcus Theatres do not maintain separate accounting systems 
when Marcus Corp. provided [Plaintiff] with two years of the monthly financial reporting from 
Marcus Theatres including the January 2025 report, which is relevant to the timing of the venue 
analysis.” (Dkt. No. 56 at 5.) 
 Plaintiff responds that there is indeed evidence in the record to indicate that the two entities 
do not maintain completely separate accounting systems. Plaintiff highlights Marcus Corp.’s 
statement that it handles accounting for Marcus Theatres, including accounts payable and accounts 
receivable (Dkt. Nos. 23-1 at 3, 55-11 at 17), and the admission from Mr. Welsh that “there really 

is no separate cash-balance accounting that would be meaningful to this discussion” (Dkt. No. 55-
3 at 95). Welsh also indicates that he did not know whether Marcus Corp. could determine balances 
of Marcus Theatre’s bank accounts without assistance from a Marcus Theatres employee. (Id.) 
Additionally, Plaintiff points to Marcus Corp.’s statement that the monthly spreadsheets of revenue 
and costs it receives from Marcus Theatres do not provide information about Marcus Theatres’ 
assets (including cash holdings) or liabilities. (Dkt. No. 58 at 6, citing Dkt. No. 55-3 at 91.) In line 
with this, Marcus Corp. did not dispute Plaintiff’s deduction (from this lack of information in the 
monthly reports) that Marcus Corp.’s accounting department collects and generates all of Marcus 
Theatres’ other financial data on its own. (Dkt. No. 58 at 6-7, citing Dkt. No. 55 at 17.) 
 Given this evidence of co-mingling of accounting responsibilities and measures across 

Marcus Corp. and Marcus Theatres, with the only response from Plaintiff being that Marcus 
Theatres provides monthly financial reporting to Marcus Corp., the Court similarly finds that this 
factor weighs in favor of a finding of alter ego status. 
 E. Whether Marcus Corp. Exercises Complete Control Over the Marcus Theatres’ 
 General Policies or Daily Activities 
 The final Hargrave factor concerns the degree of control Marcus Corp. exercises over 
Marcus Theatres’ general policies and daily activities. On this factor, Marcus Corp. asserts that 
Marcus Theatres alone controls its own policies and daily activities. (Dkt. No. 56 at 5.) In support 
of this assertion, it states: (1) there is distinct division leadership within Marcus Theatres, with 
President Mark Gramz leading the division and eight direct reports covering the “theatre-specific 
functions” of “Cinema Projection, Human Resources, Content Strategy/R&D/Sales, Finance, 
Marketing, Operations, and F&B” (Dkt. No. 56 at 5, citing Dkt. No. 57-2 at 2); (2) each of these 
functional areas has “its own management chain… supervising large employee groups” (Dkt. No. 

56 at 5-6, citing Dkt. No. 57-2 at 3-10); and (3) reporting lines for operational matters are internal 
to Marcus Theatres and do not end up at Marcus Corp.’s CEO (Dkt. No. 56 at 6, citing Dkt. No. 
57-2). 
 Plaintiff responds that this factor is “at worst[] neutral” for Marcus Corp. (Dkt. No. 58 at 
7.) Plaintiff highlights that Marcus Corp. did not produce Marcus Theatres’ internal policies, 
despite an order from the Court requiring it to do so (Id., citing Dkt. No. 54 at 3). Plaintiff also 
raises again that Marcus Corp. “controls the daily activities of certain business departments on 
behalf of Marcus Theatres, including accounting, payroll, legal services, human resources benefits 
administration, and information technology” (Dkt. No. 58 at 7, citing Dkt. Nos. 23-1 at 3, 55-11 at 
17, and 55-3 at 36-37). Plaintiff then argues Marcus Corp. “exerts complete control over Marcus 

Theatres’ business by dominating its finances and keeping it in an undercapitalized state.” (Dkt. 
No. 58 at 7.) 
 In its original response brief, Plaintiff discusses these two points at length under the Bridas 
framework which it initially applied. Plaintiff lays out how Marcus Corp. finances Marcus 
Theatres through a 2020 credit agreement to which it is the sole beneficiary (though Marcus 
Theatres’ assets are pledged to secure this agreement), and that Marcus Corp.’s consolidated 
financial filings “do not identify any financing instrument available to Marcus Theatres other than 
those held by Marcus Corp.” (Dkt. No. 55 at 14-15.) Further, Plaintiff demonstrates that Marcus 
Corp. uses the property of its subsidiaries, including Marcus Theatres, to secure Marcus Corp.’s 
credit facility and senior notes. (Id. at 16, citing Dkt. No. 55-13 at 70-72.) 
 Finally, Plaintiff discusses how Marcus Corp. provided no information on the balances of 
Marcus Theatres accounts except to state that the liquidity of Marcus Corp. and Marcus Theatres 

together is sufficient. (Dkt. No. 55 at 15) This does not provide any information specific to Marcus 
Theatres about whether it is appropriately capitalized. (Id.) This suggests Marcus Theatres alone 
is undercapitalized, which draws attention to a statement from Mr. Welsh (in his declaration) that 
Marcus Corp. “is not guaranteeing the debts of Marcus Theatres.” (Id at 16, citing Dkt. No. 55-3 
at 115.) 
 On balance, the Court finds that this factor weighs against a determination of alter ego 
status given the evidence regarding separate chains of command for day-to-day operations of 
Marcus Theatres. However, given the probative showing that Plaintiff makes in response, this 
weighs only slightly against such a finding. 
 F. Totality of the Factors 

 Given that the alter ego determination is “heavily fact-specific” and the Fifth Circuit 
instructs that courts examine the totality of the circumstances, no one factor is dispositive. Jon-T 
Chemicals, 768 F.2d at 694. In particular, complete stock ownership and shared directors and 
officers are common occurrences in typical parent/subsidiary relationships and are not enough on 
their own to justify an imputation of venue via an alter ego theory. Id. at 691 (“[O]ur cases are 
clear that one-hundred percent ownership and identity of directors and officers are, even together, 
an insufficient basis for applying the alter ego theory to pierce the corporate veil.”) However, 
Plaintiff’s showing on those two factors is meaningless—it is significant that factors one and two 
of the Hargrave test weigh so strongly in favor of a finding of alter ego status. 
 Factors three and four also weigh in favor of holding that Marcus Theatres is an alter ego 
of Marcus Corp., as discussed above. Only on factor five does Marcus Corp. make a showing 
contrary to a finding of alter ego status, via a few pages of charts detailing the “executive 
committee” of Marcus Theatres, indicating that Marcus Theatres runs its own theatre-specific day-

to-day operations. This showing from Marcus Corp. is not enough to overcome the other factors 
weighing against it, as well as the evidence Plaintiff provided. Plaintiff’s evidence demonstrated 
that Marcus Corp. finances Marcus Theatres. Plaintiff further showed Marcus Theatres is likely 
undercapitalized and that Marcus Corp. pledges security interest and liens on Marcus Theatres’ 
property to obtain its own credit facility and senior notes. Plaintiff finally demonstrated that 
Marcus Corp. and Marcus Theatres have common business departments such as payroll, legal 
services, human resources benefits administration, and information technology. 
 Given the totality of the circumstances, the Court finds that four of five Hargrave factors 
weigh in favor of imputing venue from Marcus Theatres onto Marcus Corp., with the fifth 
weighing only slightly against such a finding. As such, the Court determines on these facts that 

Plaintiff has met its burden to show “‘something beyond’ the existence of [a] corporate 
relationship.” Freudensprung., 379 F.3d at 346 (quoting Dickson Marine, 179 F.3d at 338). 
 IV. CONCLUSION 
 For the reasons stated herein, the Court DENIES Plaintiff’s Motion to Dismiss (Dkt. No. 23) 
as set forth above. 
 Given that the parties filed some of their briefing under seal, the Court files this Order under 
seal as well. However, the parties are directed to jointly prepare a redacted version of this Order 
for public viewing and to file the same on the Court’s docket as an attachment to a Notice of 
Redaction within five (5) business days of this Order. 
So ORDERED and SIGNED this 20th day of November, 2025. 

 RODNEY GILSTRAP \ 
 UNITED STATES DISTRICT JUDGE 

 12